COMMONWEALTH *vs.* THOMAS JOHNSON & others.

Suffolk.    April 3, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Possession of Burglarious Implements.  Evidence,* Relevancy, Competency, Of experiments, Best and Secondary, Opinion: experts, Admissions and confessions. *Practice, Criminal,* Exceptions, Conduct of trial.  *Constitutional Law.*

At the trial of six defendants under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, the government may put in evidence begging cards found in a tenement which the jury could find to have been the home of the defendants, as having a slight tendency to show the apparent occupation of the defendants or some of them, and as having a relation to the preliminary preparations for burglary.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, a sergeant of police may be permitted to testify, after being cautioned to confine his testimony to particular instances, that a hall, near the house in which the defendants were living and in which the burglarious implements were found, had been broken into and a safe there blown open about three weeks before, if the presiding judge rules that he will admit the evidence *de bene* and will rule upon its competency later, as this evidence, if sufficiently connected with the defendants, would tend to show the intent with which they had the implements in their possession, although incidentally its effect would be to show the commission of another crime.

Where at a criminal trial the presiding judge, subject to the exception of the defendant, admits *de bene* evidence which will become relevant if connected with the defendant by other evidence, saying that he will rule upon its competency later, and the government fails to introduce the connecting evidence, if the defendant wants the evidence excluded, he must ask the judge to strike it out and to instruct the jury to disregard it, and, if he fails to do so, he cannot profit by his exception to the admission of the evidence at a time when it might have become competent.

If at a criminal trial the defendant allows certain evidence to go in without objection, and after it is in objects to it, his objection comes too late, unless the answers are not responsive to the questions, and, in that case, his remedy is to ask to have them stricken out as irresponsive.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, if among the things found in the tenement where the defendants lived were a chisel and a fuse, which in themselves are lawful implements, *it seems* that it is within the discretion of the presiding judge to allow a witness against the defendants' objection to testify that within five minutes' walk from the house in which the defendants lived a certain hall was broken open and a window was forced, and to explain how chisels were used in effecting an entrance to the building and in opening the cash drawer, and that soap was put on the edges of the safe door, another witness having testified without objection that one of the ways of blowing open safes common with burglars is to pour nitro-glycerine into the crack around the door by means of a cup of soap, and to cause it to explode by a fuse, this evidence being regarded as in the nature of the narration of an experiment observed as to its effects by the witness, the admission of which is within the discretion of a presiding judge.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, it was shown that after the defendants had been arrested and had been removed to the station house an envelope addressed to one of the defendants was brought by a messenger to the tenement where the defendants lived and there was received and opened by the wife of the defendant to whom it was addressed, and that, on that defendant coming in, a telegram contained in the envelope was handed to him by his wife, that this defendant declared that he did not know anything about it, that thereupon the telegram was read to him by a police officer, whereupon this defendant shook his head. There was evidence that the telegram was lost, and the presiding judge allowed the police officer who read it to the defendant and another who heard it read to testify to its contents. The defendants did not object to the admission of the contents of the telegram on general grounds, nor as inadmissible against the defendants other than the one to whom

it was addressed, but excepted to its admission solely on the ground that the defendant to whom the telegram was addressed said that he did not know anything about it. *Held,* that this objection was untenable, as the denial of knowledge by a defendant does not make evidence against him inadmissible, and that, the paper being lost, secondary evidence of its contents was admitted properly.

It is no ground for excluding evidence of a confession of a defendant in a criminal case that it is related by the witness "in a narrative form."

Where in a criminal case a witness for the government is narrating a conversation, the judge, in the absence of a request from the defendant to limit the narration to those parts of the conversation which are competent, in his discretion may allow the witness to finish his answer in order to determine intelligently what portions of it are admissible. When this is done, if the defendant wishes to except to the admission of any portions of the conversation, he must ask to have those parts stricken out. A general exception cannot be sustained if any part of the answer is admissible.

In the trial of a criminal case it is the better practice for the presiding judge before exercising his discretion by admitting evidence temporarily, which may be made competent by other evidence introduced later, to require the prosecuting officer to state to him what he expects to prove and how he intends to connect it with the defendant, and to exclude such evidence as appears to be incompetent upon this statement.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, a police inspector testified that during his conversation with one of the defendants a photograph of that defendant was shown, and the photograph then was exhibited to the jury. The photograph had been taken from the Rogues' Gallery and had written upon its back the police history of this defendant. The defendants excepted generally to the admission of the photograph in evidence, but made no objection on account of what was written on the back of it, and the attention of the judge was not called to this. It did not appear that the jury saw what was on the back of the photograph. *Held,* that the photograph was admissible on the question of the identity of the defendant whose photograph it was, and, although the writing on the back of the photograph rendered it incompetent to pass into the hands of the jury, and it should have been withheld from them if attention had been called to the matter, yet, in the absence of an exception on this ground, the verdict could not be set aside on this account.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, a chief inspector of police was permitted to testify that a chisel and certain bags of cartridges, which were found in the tenement where the defendants lived, were such as ordinarily were used by burglars and such as were found upon or with them.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, it was admitted that several of them lived in a tenement where all of them were found together with their coats off, and where also were found implements capable of being used for committing burglaries and many loaded firearms. There was evidence in regard to the appearance of all of them from which the jury might infer that they were at home when the police officers found them. *Held,* that upon these facts and other circumstances which appeared in evidence the judge rightly refused to order a verdict of not guilty for the several defendants.

In a criminal case, although the failure of the defendant to testify in his own behalf cannot be used against him, inferences against him may be drawn from his failure to produce other witnesses.

At the trial of six defendants on an indictment under R. L. c. 208, § 41, for having in their possession burglarious implements intending to use them as such, where it appears that the defendants were found together in a tenement, which there was evidence was the home of all of them, and where also were found implements commonly used for committing burglaries and many loaded firearms, if the defendants fail to call any witnesses to testify in regard to their occupations and residences, their failure to do so is a circumstance proper for the consideration of the jury.

INDICTMENT, found and returned in the Superior Court in the county of Suffolk on May 11, 1907, under R. L. c. 208, § 41, charging that Thomas Johnson, John Harris, William Dolan, John Williams, Frederick Dickerson and John Owens on March 24, 1907, at Boston " knowingly did have in their possession certain machines, tools and implements adapted and designed for cutting through, forcing and breaking open buildings, rooms, vaults, safes and other depositories, in order to steal therefrom such money and other property as might be found therein, the said Johnson, Harris, Dolan, Williams, Dickerson and Owens knowing said machines, tools, and implements to be adapted and designed for the purpose aforesaid, and intending to use and employ them therefor."

At the trial in the Superior Court before *Bond,* J., the jury returned a verdict of guilty against each of the six defendants; and the defendants alleged exceptions, the judge making an order staying the execution of the sentences he had imposed until further order of the court.

The case was submitted on briefs.

*J. F. Sweeney & W. J. Day,* for the defendants.

*M. J. Dwyer,* Assistant District Attorney, for the Commonwealth.

RUGG, J. This is an indictment charging the defendants with knowingly having in their possession burglarious implements and intending to use them as such. The exceptions relate to the admission of evidence and the charge.

1. Four types of cards, all mendicant in character, were received in evidence. They were found in the tenement, which the jury may have found to have been the home of the defendants, at the time of their arrest. These had a slight tendency

to show the apparent occupation of the defendants or some of them, and may well have a close relation to the preliminary preparations for burglary. They were properly received in evidence.

2. A sergeant of police was permitted to answer, after being cautioned to confine his testimony to particular instances, that a hall, near where the defendants were living, had been broken into and a safe blown about three weeks before, the judge saying that the evidence would be taken, and its competency ruled upon later. It is conceivable that, as bearing upon the intent with which the implements described in the indictment were in the defendants' possession, it might have appeared that the defendants used the same implements in making another break. *Commonwealth* v. *Day*, 138 Mass. 186. Although the effect of this evidence would be to show the commission of another crime, it would not thereby be incompetent upon the issue raised by the plea to this indictment. Hence the judge cannot be said to have exceeded his discretion in permitting this evidence to be introduced conditionally. When it was not so connected with the defendants by other circumstances as to make it competent for any purpose, it was then the duty of the defendants to ask the judge to strike out the evidence and to instruct the jury that they were to disregard it. Their failure to do so gives them no ground upon which to support their earlier objection. *Brady* v. *Finn*, 162 Mass. 260, 267. *Ellis* v. *Thayer*, 183 Mass. 309. *Williams* v. *Clarke*, 182 Mass. 316. *Putnam* v. *Harris*, 193 Mass. 58, 62.

It is stated in the exceptions that, after one Gleavy testified that a burglary was committed at a certain hall about five minutes' walk from where one of the defendants lived and the window forced, " At this time counsel for the defense objected to the introduction of this testimony, and upon objection being overruled," excepted. " The witness then proceeded to testify " further respecting this burglary, how chisels were used in effecting an entrance to the building and in opening the cash drawer, and soap put on the edges of the safe door. Another witness without objection testified that one of the ways of blowing open safes, common with burglars, was to pour nitro-glycerine into the crack around the door by means of a cup of soap, and causing it to explode by a fuse. It is doubtful if upon this record the

defendants have any exception. Apparently they permitted the testimony as to the fact of burglary, its time and place, to go in without saying anything, and at its close, objecting to it. It was then too late to object, if the answers were responsive to the questions. If not, they should have moved to strike them out as irresponsive. The rest of the testimony of Gleavy went in without objection or exception. But the evidence was probably competent upon the single issue of how the chisel and fuse, found in the house of the defendants, which were lawful implements in themselves, might be used in combination with a common toilet article to effect a successful burglary. It was in the nature of an experiment observed as to its effects by the witness, and admissible within the discretion of the trial court. See *Baker* v. *Harrington*, 196 Mass. 339.

3. As the inspector and police officers were entering the tenement of the defendants on the day of their arrest, they met a man who apparently came from this tenement. After the defendants had been removed to the station house, the wife of the defendant Johnson being in the tenement, an envelope addressed to Johnson was brought by a messenger. It was opened by the wife and handed to Johnson when he came in later, who said he did not know about it. It was then read to him by the witness, a police officer, whereupon Johnson shook his head. The contents of the telegram were not objected to on general grounds, nor as against other defendants than Johnson, but on the narrow ground that Johnson said he did not know anything about it. Manifestly this ground is untenable. Mere denial of knowledge by a defendant does not make evidence against him inadmissible. There was testimony tending to show that the paper was lost, and the Commonwealth was permitted to prove its contents through the witness who read it to Johnson and another who heard it read. To this form of proving the contents of the lost paper the defendants objected. It having appeared that it was impossible to produce the original writing at the trial, secondary evidence in the form of oral testimony of its contents was admissible.* *Commonwealth* v. *McGurty*, 145 Mass. 257.

---

* The contents of the telegram as testified to were as follows: "Tom, blow one at a time, the house is piped. Joe."

4. The chief inspector of police was asked to relate a conversation he had with Johnson in the presence of the other defendants. Objection was made to this question, if it was "intended to bring out any admissions, any descriptions, . . . or anything concerning any other offenses. . . ." No request was made, however, that the witness be cautioned and manifestly the objection was too broad. There appeared to be no reason why a confession made by any of the defendants was not competent. The only exception saved was in permitting the "conversation to be related in a narrative form." Construing the exception strictly in the form in which it was saved, it must be overruled. Most conversations are reproduced in evidence in a narrative form, and it is often difficult, if not impossible, for a witness to give it in any other way. Some of the evidence given by the witness in reponse to the question — for example, that relating to the names, by which the defendants were known — was admissible as bearing upon the identity of the defendants, and as tending to show that they gave fictitious names at the time of their arrest. *Commonwealth* v. *Costello*, 120 Mass. 358, 369. In the absence of a specific request from the defendants that the witness be limited in his relation of the conversation to those portions only which were competent, one course open to the judge was to permit the question to be answered in order that he might determine intelligently upon the admissibility of the conversation. It was then the duty of the defendants to ask that the portions, to which they specifically objected, be stricken out, and the jury directed not to consider them. They did not pursue this course, and hence the exception cannot be sustained. *Williams* v. *Clarke*, 182 Mass. 316. *Commonwealth* v. *Quinn*, 150 Mass. 401. With reference to this evidence as well as that of another burglary in the neighborhood by the sergeant of police above referred to, it would have been better practice for the judge to have required the district attorney to state to him what he expected to prove and how he intended to connect it with the defendants, and if it did not appear competent on this statement, to exclude whatever evidence was incompetent. But on this record it cannot be said that the defendants have a valid exception.

The inspector testified that during his conversation with the

defendant Owens, his photograph was shown.   This photograph of Owens was then exhibited to the jury, it having been taken from the Rogues' Gallery and indorsed with his police history. To the introduction of this photograph an exception was saved, but the attention of the judge was not called to, and no objection was made on account of, what was on the back of the photograph, and it does not appear that the jury saw what was on the back of it.   The photograph was admissible on the question of the identity of the defendant Owens.   *Commonwealth* v. *Campbell,* 155 Mass. 537.   *Commonwealth* v. *Morgan,* 159 Mass. 375.   What was upon the back of the photograph rendered it incompetent to pass into the hands of the jury, if attention had been called to it, but, in the absence of an exception on this ground, the verdict cannot be set aside at this time.   Every argument respecting this matter was open to the defendant Owens upon his motion for a new trial.

5. The chief inspector was permitted to testify that the chisel and the bags of cartridges found in the tenement of the defendants were such as were ordinarily used by burglars, and found upon or with them.   The defendants' exception to this evidence must be overruled.   *Commonwealth* v. *Brown,* 121 Mass. 69, 81.

6. The judge properly refused to direct a verdict of not guilty for the several defendants.   The admission that several of them lived in the tenement, where they were found, and the appearance of all of them from which the jury might infer that they were at home at the time the officers called, together with the implements capable of being used for committing burglaries, and the quantity of loaded firearms, which orderly citizens do not commonly have, together with the other circumstances appearing in evidence, were enough to warrant a verdict of guilty. *Commonwealth* v. *Tivnon,* 8 Gray, 375.   *Commonwealth* v. *Day,* 138 Mass. 186.   *Commonwealth* v. *Conlin,* 188 Mass. 282.

The charge of the judge respecting possession of the burglarious implements by the several defendants was in accordance with the principles laid down in *Commonwealth* v. *Tivnon,* 8 Gray, 375.   The portion of the charge as to the inferences that the jury would be warranted in drawing from the failure of the defendants to call witnesses on their own behalf was carefully guarded to the extent of preserving their constitutional right

that no inferences should be drawn from their failure to testify. But as was said by Chief Justice Holmes, in *Commonwealth* v. *Goldstein*, 180 Mass. 374, " A defendant has no general immunity from comment on his mode of conducting his defense in a criminal case." Law abiding and industrious citizens, ordinarily, are able to call witnesses, who could give evidence respecting their occupation and residence. The failure of defendants to call such witnesses is a circumstance proper for the consideration of the jury. *Commonwealth* v. *McCabe*, 163 Mass. 98. The illustration given by the judge as to the weight, which may be attached to the fact that the defendants were all in one tenement with their coats off, was not open to exception. It was a homely and pertinent test, which the jury were left to use or not, as they might find it applicable to the facts before them. The charge is not given in full, and it must be assumed that adequate instructions were given as to the general subject.

*Exceptions overruled.*