COMMONWEALTH *vs.* WILLIAM ANDERSON.

Middlesex.    March 30, 1923. — May 23, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Pleading, Criminal,* Indictment, Bill of particulars.    *Possession of Burglarious Implements. Evidence,* Opinion: experts; Competency; Presumptions and burden of proof; Admissions and confessions.    *Practice, Criminal,* Conduct of trial.

An indictment, charging the defendant with having in his possession burglar's tools " adapted and designed for cutting through, forcing and breaking open buildings, rooms, vaults, safes and other depositories, in order to steal therefrom such money and other property as might be found therein, . . . knowing said machines, tools and implements to be adapted and designed

for the purpose aforesaid, and intending to use and employ them therefor," is correctly drawn according to the form prescribed in G. L. c. 277, § 79, and is sufficient.

In the indictment above described, the charge against the defendant was fully, plainly, substantially and formally set out in the indictment, and he was given reasonable notice of the nature and grounds thereof; he therefore could not of right demand further specifications.

At the trial of the indictment above described, there was evidence tending to show that between two and three o'clock in a morning in the middle of February, the defendant with three other men were in an automobile owned and driven by one of them; that, at the request of a police officer, the owner drove to police headquarters and entered the building; that, while he and the officer were within the building and the automobile was standing in front of it, the defendant tried to jump from the automobile and attempted to place a nickel-plated revolver between the cushion and the rear seat; that two sticks of dynamite, two bottles of nitroglycerine, a quantity of wire, fuses, detonators, gloves, punches, drills, chisels, a bit-stock, hammer, pocket knife, padlock, bunch of keys, two thumb screws, and a number of pistol cartridges, which were adapted for the uses charged, were found in the automobile. At the close of the evidence, the defendant moved that a verdict of not guilty be ordered. The motion was denied and the defendant was found guilty. *Held*, that the motion properly was denied and that the verdict was warranted.

At the trial of the indictment above described, one, who had been connected with the State police for twelve years as an expert on explosives, had an experience of thirty-eight years as a chemist, and had made many examinations of tools used in connection with dynamite and explosives, properly may be found to be qualified, and may be permitted to testify as an expert as to the adaptability of the tools and implements in question for cutting through and breaking open buildings and other depositories.

In the cross-examination of the witness above described, relative to his qualifications as an expert, after he had testified that the tools in question were in use in general machine work and that he had not seen them used for any other purpose, he was asked " Have you ever used or seen used any such tools as are here for any other purpose than carpenter work or building up some machinery?" The trial judge then said, " You mean, has he ever been a burglar?" The defendant excepted to this question of the judge. The witness answered, " I have never seen tools of these kinds used for any other purpose than carpenter work or wood work or for metal work." The defendant's counsel subsequently cross-examined the witness as to the uses of these tools and his experience with reference to them; the witness testified that they were adapted and designed for breaking into buildings and vaults. *Held*, that, in the circumstances, there was no error of law in the question asked by the judge, and that the defendant was not harmed by it.

An inspector of police properly was allowed to testify, at the trial above described, as to questions asked by him of the defendant, who then was in jail after his arrest and to whom he had explained his rights in the circumstances, as to the answers given by the defendant, as to certain instances where the defendant refused to answer and as to his conduct during the inquiry.

It was within the discretion of the trial judge to refuse to permit such inspector of police to be questioned as to the truth of all the answers made by the defendant to his questions.

It was not error for the trial judge at the trial above described to exclude evidence tending to show that certain police officers, who also had interviewed the defendant after his arrest, had not been called to testify for the Commonwealth.

It was not error for the trial judge at the trial above described to exclude evidence tending to show that the police inspector had procured an indictment against the owner of the automobile in which the defendant was riding, charging such owner with transporting dynamite illegally.

It is a proper exercise of discretion by the judge presiding at the trial of an indictment to refuse to permit counsel for the defendant in his closing argument to repeat a statement of the rule as to the legal presumption of innocence in the defendant's favor in the words of a former judge of the Superior Court, giving the judge's name.

On the evidence at the trial above described, the defendant's knowledge that the tools were adapted for the uses claimed by the Commonwealth, and that they were in his possession, were questions of fact for the jury.

No exception will be sustained to a refusal to give a ruling asked for by the defendant at the trial of an indictment, if it is given in substance in the charge.

Taken in connection with the entire charge to the jury at the trial above described, it was *held* that there was no error in a statement therein, " A chisel or a stone bit, though a tool in common use . . . has been stated by the Supreme Court to be as efficacious in the hands of a burglar to carry out his felonious intent as a jimmy or lock picker."

The defendant was tried at the same time upon the indictment above described and upon an indictment charging him with carrying a pistol without authority. When the defendant, who had attempted to conceal a pistol in the automobile as he was leaving it, was taken to the police station, he was searched and five loaded cartridges were found in his trousers' pocket. A police sergeant, a witness for the Commonwealth, was asked if at this time he had any conversation with the defendant, and replied that he did. The witness was then asked what was said, and answered: " I asked him why he had the gun and he made me no answer." *Held*, that the evidence was inadmissible, that the error in its admission was prejudicial, and that a motion to strike it out should have been granted.

At the trial above described, the defendant asked the judge to instruct the jury that the " defendant is presumed to be innocent." The request was refused, and the defendant excepted. Extensive instructions were given to the jury on the question of the burden of proof; but the instruction requested was not given in form or in substance, and it was *held*, that the failure to give such instruction was error prejudicial to the defendant and required the sustaining of the exception.

INDICTMENT, found and returned on March 11, 1921, charging that the defendant on February 17, 1921, at Newton, " did knowingly have in his possession certain machines, tools and implements adapted and designed for

cutting through, forcing and breaking open buildings, rooms, vaults, safes and other depositories, in order to steal therefrom such money and other property as might be found therein," knowing them " to be adapted and designed for the purpose aforesaid, and intending to use and employ them therefor."

In the Superior Court, the indictment was tried before *Hammond,* J., at the same time with an indictment against the defendant charging him with carrying a pistol without authority.

The testimony of Richard J. Goode, inspector of police in the city of Newton, for the Commonwealth, referred to in the opinion, was to the effect that he had a talk with the defendant on the morning after his arrest. " I told Anderson who I was. I said ' Anderson, I am inspector of police.' I told him of his rights. ' You needn't tell anything if you don't want, but anything you say will be for or against you in court.' . . . I says, ' Where did you come from, Anderson? ' He said, ' I come from St. Louis.' I said, ' What is your business? ' He said, ' I am a brick layer.' I said, ' What are you doing in that car this morning? ' He said, ' I met some fellows.' ' How many did you meet? ' ' Met three of them.' 'Where did you meet them? ' He thought for a little while and said he didn't care to say. All right. I says to him, ' What do you work at? ' No, I says to him, ' What have you been working at? ' He said, ' I ain't been doing anything lately.' I said, ' You say you are a brick layer?' He said, ' Yes.' 'How long ago since you worked at that? ' He thought for quite a while and said some time ago. I said, ' How about these tools here? ' He said, ' I don't know anything about them.' ' Are they yours? ' ' No.' I said, ' Who owns this bag? ' Pointing to that bag. He said, ' One of the other fellows must own that. It ain't mine.' I said, ' Is that your right name, Anderson? ' He said, ' Yes, that is my name.' ' Did you ever go by any other name? ' He said ' No.' I says to him, ' Well, then, I will have to take your finger prints.' All right. I took them. And he signed the card, William Anderson, St. Louis."

The defendant, besides excepting to the admission of this testimony, moved to strike it all out on the ground that nothing said by the defendant could be construed as any admission of guilt or of any fact or circumstance which could warrant an inference against him.

The Boston police officers, evidence as to the non-production of whom as witnesses for the Commonwealth was excluded by the judge, as stated in the opinion, were officers who had talked with the defendant in jail after his arrest.

The circumstances as to the offer of proof made by the defendant were these: Police Officer Goode was being cross-examined by the defendant and was asked if he had made a complaint against Boylan on the ground of transporting dynamite illegally. On objection by the Commonwealth, the question was excluded. The defendant's counsel then asked if he should " make an offer of proof," and the judge said, " You cannot make an offer of proof, he is not your witness. . . . I do not say you shall not make an offer of proof when it comes time to put in your case. I will exclude that question on cross-examination of this witness. That is all I do." The defendant's counsel saved an exception and stated, " Very well, at the close of the evidence I will make an offer of proof." At the close of the case for the Commonwealth, the defendant called Officer Goode as his own witness and made inquiries as to the complaint against Boylan, which were excluded subject to his exceptions.

The defendant did not testify. At the close of the evidence, the defendant asked for the following rulings:

" 1. Upon the indictment and the evidence, the defendant is entitled to a verdict of not guilty upon the charge of knowingly possessing burglarious implements, etc."

" 7. The defendant is presumed to be innocent. This presumption is with the defendant at the outset of the trial and continues with him through all its stages, unless and until evidence is introduced proving his guilt beyond reasonable doubt.

" 8. Suspicion is not evidence; and if all the evidence only raises a strong suspicion of guilt, the defendant must be acquitted.

" 9. The defendant is of right entitled to the benefit of every reasonable doubt. Every presumption of honesty, uprightness, good character, and lawful conduct must be taken to be in the defendant's favor.

" 10. As this case stands, the defendant is not a competent witness, and no inference can be drawn against this defendant because he has not testified as a witness in his own behalf.

" 11. Unless the Commonwealth proves beyond reasonable doubt that the defendant knew that the machines, tools or implements found in Boylan's automobile were adapted and designed for cutting through, forcing or breaking open a building, room, vault, safe or other depository in order to steal therefrom money or other property, the defendant must be acquitted.

" 12. There is no evidence that the defendant knew that the machines, tools or implements found in Boylan's automobile were adapted and designed for cutting through, forcing or breaking open a building, room, vault, safe or other depository in order to steal therefrom money or other property.

" 13. There is no. evidence of a common purpose, or design, on the part of the defendant and any other occupant of Boylan's automobile, to do any unlawful act.

" 14. There is no evidence, (1) That the defendant knowingly had the machines, tools or implements in his possession; (2) That the defendant knew they were adapted and designed for the purpose alleged in the indictment; (3) That the defendant intended to use them for cutting through, forcing or breaking open buildings, rooms, vaults, safes or other depositories in order to steal therefrom.

" 15. It is not proof of possession by the defendant to show that machines, tools or implements named in the indictment were found in Boylan's automobile in which the defendant was or had been a passenger.

" 16. If, upon all the evidence, the machine, tools or implements might have been in the custody or possession of Boylan or some other person, without the defendant's knowledge, the defendant cannot be convicted.

" 17. If there are two uses which may be made of a ma-

chine, tool or implement, one of which is lawful and the other unlawful, in the absence of express intent, the law presumes that the person in possession thereof does not intend to make any unlawful use thereof.

" 18. If the machines, tools or implements alleged in the indictment were in the possession of Boylan and not of the defendant, the defendant cannot be convicted even if it appears that both intended to use them in a joint undertaking.

" 19. Intent to use the machines, tools or implements for a purpose specified in the statute cannot be presumed. Unless unlawful intent is proved beyond reasonable doubt, the defendant must be acquitted.

" 20. Upon the evidence in this case neither dynamite nor nitro-glycerine is a machine, tool or implement."

The trial judge gave the eighteenth and twentieth requests, but refused to give the others except in so far as they were given in substance in the charge.

Other material evidence and instructions to the jury are described in the opinion.

The defendant was found guilty; and alleged exceptions.

The case was argued at the bar in March, 1923, before *Rugg,* C.J., *Braley, DeCourcy, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the Justices, except *Jenney,* J.

*C. W. Rowley,* for the defendant.

*R. T. Bushnell,* Assistant District Attorney, for the Commonwealth.

CARROLL, J.    The defendant was indicted for having in his possession burglar's tools " adapted and designed for cutting through, forcing and breaking open buildings, rooms, vaults, safes and other depositories, in order to steal therefrom such money and other property as might be found therein, . . . knowing said machines, tools and implements to be adapted and designed for the purpose aforesaid, and intending to use and employ them therefor."

There was evidence that between two and three o'clock on the morning of February 17, 1921, the defendant with three men were in an automobile in West Newton, owned

and driven by one Boylan.   At the request of a police officer, Boylan drove to police headquarters.   While Boylan and an officer were within the police station and the automobile was standing in front of it, the defendant tried to jump from the automobile and attempted to place a nickel-plated revolver between the cushion and the rear seat.   Two sticks of dynamite, two bottles of nitro-glycerine, a quantity of wire, fuses, detonators, gloves, punches, drills, chisels, a bit-stock, hammer, pocket knife, padlock, bunch of keys, two thumb screws, and a number of pistol cartridges were found in the automobile.   The defendant was found guilty and the case is before us on the defendant's exceptions.

1. There was no error in overruling the defendant's motion to quash the indictment.   It was correctly drawn according to the form prescribed in G. L. c. 277, § 79;   the statute provides that the forms annexed shall be sufficient in cases to which they are applicable.

The defendant's motion for a statement of particulars was denied properly.   G. L. c. 277, § 40, enacts that the court may order the prosecution to file a statement of such particulars as may be necessary to give the defendant and the court reasonable knowledge of the nature and grounds of the crime charged; and at the request of the defendant shall so order, if it cannot otherwise be fully, plainly, substantially and formally stated.   The charge against the defendant was fully, plainly, substantially and formally set out in the indictment, and he was given reasonable notice of the nature and grounds thereof.   He could not of right demand further specifications.   *Commonwealth* v. *King,* 202 Mass. 379.   *Commonwealth* v. *Wood,* 4 Gray, 11.

There was no error in denying the defendant's motion to direct a verdict of not guilty.   The defendant was found with three men in an automobile, at half past two o'clock in the morning.   He attempted to jump from the machine. In the automobile were found the various instruments capable of use for committing the crime of burglary.   The offence charged was the possession with knowledge, of burglarious implements with the intent to use them for such purpose.   The intent to use them to commit the crime of

burglary was a question of fact for the jury, and there was evidence from which the jury could find that the defendant was guilty. *Commonwealth* v. *Johnson*, 199 Mass. 55. *Commonwealth* v. *Conlin*, 188 Mass. 282. *Commonwealth* v. *Day*, 138 Mass. 186.

2. Walter L. Wedger, who had been connected with the State police for twelve years as an expert on explosives, had an experience of thirty-eight years as a chemist, and had made many examinations of tools used in connection with dynamite and explosives, was permitted to testify as an expert to the adaptability of the tools and implements in question for cutting through and breaking open buildings and other depositories. The witness was shown to be qualified; there was no error in the admission of his testimony. See *Commonwealth* v. *Johnson*, 199 Mass. 55.

3. The last named witness was examined at length by the district attorney and by the defendant's counsel as to his qualifications as an expert. In reply to a question of the trial judge if the defendant objected to the qualification of the witness, counsel for the defendant said " For one ground yes. I have not heard of his having cut open a safe." He was asked on cross-examination if he had experience in the use of the tools in question in manual labor, and he replied that they were in use in general machine work. He was then asked if he had ever seen them used for any other purpose, and he replied in the negative. This question was put to him: " Have you ever used or seen used any such tools as are here for any other purpose than carpenter work or building up some machinery? " The trial judge then said, " You mean, has he ever been a burglar? " To this the defendant excepted and the witness answered, " I have never seen tools of these kinds used for any other purpose than carpenter work or wood work or for metal work." In view of the nature of the cross-examination of the witness, the attempt to show that his experience was limited to the use of such tools in general machine work and that they were not adapted for committing the crime of burglary, the defendant cannot complain of this question put by the presiding judge. *Partelow* v. *Newton & Boston Street Railway*,

196 Mass. 24. The defendant's counsel subsequently cross-examined the witness as to the uses of these tools and his experience with reference to them; the witness testified that they were adapted and designed for breaking into buildings and vaults. In our opinion there was no error of law in this question of the judge, and the defendant was not harmed by it.

4. The statements made by the defendant to Inspector Goode were admissible. *Commonwealth* v. *Dascalakis*, 243 Mass. 519. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71. *Commonwealth* v. *Storti*, 177 Mass. 339. There was no error in admitting the evidence and the motion to strike out his testimony was overruled properly. See *Commonwealth* v. *Robinson*, 165 Mass. 426, 428. The exclusion of the answer to the question put to this witness on cross-examination which tended to show that nothing said to him by the defendant was untrue, was within the discretion of the judge and no error is shown in his ruling. There was no error of law in excluding the evidence as to the non-production of the Boston police officers as witnesses for the Commonwealth, nor in excluding the evidence with reference to the complaint against Boylan. The defendant was not harmed by the ruling regarding the offer of proof. He was told that he could make the offer when putting in his case and the defendant's counsel then said, " Very well at the close of the evidence I will make an offer of proof."

5. In the closing argument the defendant's counsel, in speaking of the legal presumption of innocence in the defendant's favor, proceeded to repeat the rule as stated by a former judge of the Superior Court, giving his name. Counsel was interrupted by the trial judge stating that it was improper for him to state in argument what some other judge had said, " and refused to allow him to continue his argument with respect to the rule which counsel claimed to have been stated " by the former judge. The extent to which books may be read to a jury is within the discretion of the court: *Commonwealth* v. *Austin*, 7 Gray, 51; and in the orderly progress of a trial the trial judge in its discretion may prohibit quotations or alleged quotations from the

statements of other judges. There was no error in the
direction of the court, especially when counsel was per-
mitted to proceed with a statement of his views of the law
on the question of reasonable doubt and concerning the pre-
sumption of innocence.

6. The defendant's knowledge that the tools were adapted
for the uses claimed by the Commonwealth, and that they
were in his possession, were questions of fact for the jury.
See *Commonwealth* v. *Johnson, supra.*

7. In so far as the tenth request correctly stated the law,
it was given in substance by the judge. There was no error
in refusing the seventeenth request in its exact words.
The jury were instructed that they must be satisfied beyond
a reasonable doubt that the instruments were in the pos-
session of the defendant to use them to break open, as stated
in the indictment. There was no error in that part of the
charge, where it was said in effect, " A chisel or a stone bit,
though a tool in common use . . . has been stated by the
Supreme Court to be as efficacious in the hands of a burglar
to carry out his felonious intent as a jimmy or lock picker,"
taken in connection with the charge as a whole. See *Com-
monwealth* v. *Tivnon,* 8 Gray, 375, 381.

8. The defendant was taken to the police station. He
was searched and five loaded 38-calibre cartridges were
found in his trousers' pocket. A police sergeant, a witness
for the Commonwealth, was asked if at this time he had any
conversation with the defendant, and replied that he did.
The witness was then asked what was said, and answered:
" I asked him why he had the gun and he made me no
answer." The defendant moved that this answer be
stricken out. The motion was denied and the defendant
excepted. The defendant was at the time on trial upon the
indictment charging him with having burglarious instru-
ments in his possession, and upon another indictment for
carrying a pistol without authority. The silence of the
defendant, while under arrest, to questions asked, is not
admissible against him. He has the right to remain mute if
he so desires, and if he is prejudiced by the testimony,
it should be stricken out. " If a defendant while under

arrest is charged with the crime by an accusation made in his presence and hearing, and he remains mute or unequivocally denies it, his silence or denial is not admissible in evidence against him. But if he makes an equivocal reply, the question or statement by which it was elicited and the answer or comment are admissible." *Commonwealth* v. *Spiropoulos, supra. Commonwealth* v. *Gangi,* 243 Mass. 341.

"The defendant Malone, while held in custody, had a right to keep silence as to the crime with which he was charged, and all circumstances connected with it, and was not called upon to reply to or contradict any statements made in his hearing. No inference against him was warranted by his failure to deny the truth of what McDermott said to the officer." *Commonwealth* v. *McDermott,* 123 Mass. 440. *Commonwealth* v. *Kenney,* 12 Met. 235. See *Rex* v. *Christie,* [1914] A. C. 545. This evidence was inadmissible and the defendant's motion to strike it out should have been allowed. We think the evidence was prejudicial to the defendant. He was on trial at the same time on a charge of carrying a pistol, but this fact is not enough to show that the defendant was not harmed by the admission of this evidence on the indictment for having burglar's tools in his possession. The fact that the defendant made no reply when asked "why he had the gun," might have had an effect on the minds of the jury and might seriously prejudice the fairness of his trial. This exception must be sustained.

9. The defendant asked the court to instruct the jury:

"7. The defendant is presumed to be innocent. This presumption is with the defendant at the outset of the trial and continues with him through all its stages, unless and until evidence is introduced proving his guilt beyond reasonable doubt.

"8. Suspicion is not evidence; and if all the evidence only raises a strong suspicion of guilt, the defendant must be acquitted.

"9. The defendant is of right entitled to the benefit of every reasonable doubt. Every presumption of honesty, uprightness, good character, and lawful conduct must be taken to be in the defendant's favor."

The defendant excepted to the refusal to give these instructions.

The jury were fully instructed that the burden of proof was upon the Commonwealth to prove the charge beyond a reasonable doubt; that unless they were satisfied beyond a reasonable doubt, it was their duty to return a verdict of not guilty. They were told that it was " not sufficient for the government, if it merely raises a suspicion that the defendant is guilty; " that no presumption arose against the defendant because he failed to testify; that the fact that an indictment has been found against him was not to be considered as evidence of guilt or to be given any consideration by the jury; that he was to be tried on the evidence presented in this court. They were instructed that " Proof beyond reasonable doubt means that if upon a full consideration of all the evidence in the case with such inferences as the jury may properly draw from the evidence, the jury feels so certain that the charge has been proved and that the charge is true that they would not hesitate to act upon that conviction of certainty in matters of importance in their own private affairs if they were called upon to make such a decision, then the jury would be warranted in considering that the case had been proved beyond a reasonable doubt." And further, that it was a part of the Commonwealth's case to satisfy them beyond a reasonable doubt that the articles referred to in the indictment were adapted to the purposes stated in the indictment; and that the burden was upon the Commonwealth to satisfy them beyond a reasonable doubt that the possession of the articles by the defendant was with the intent to use them for the purpose of " breaking open " as stated in the indictment. Notwithstanding what was said in the charge in reference to the burden of proof and the rights of the defendant, in our opinion there was error in refusing to instruct the jury that the defendant is presumed to be innocent.

In *Commonwealth* v. *Kimball*, 24 Pick. 366, the defendant asked for the instruction, page 368, " that the burden of proof is on the government to make out their whole case, and that when a *prima facie* case is made out, it then becomes

incumbent on the defendant only to create a reasonable doubt thereof." But the court instructed them " that when the government have made out a *prima facie* case, it is then incumbent on the defendant to restore himself to that presumption of innocence in which he was at the commencement of the trial." At page 374 Chief Justice Shaw said, " The court are of opinion that the jury should have been instructed, that the burden of proof was upon the Commonwealth, to prove the guilt of the defendant; that he was to be presumed innocent, unless the whole evidence in the case satisfied them that he was guilty." The presumption of innocence is referred to in *Commonwealth* v.*Williams*, 6 Gray, 1, 4. In *Commonwealth* v. *Webster*, 5 Cush. 295, Chief Justice Shaw, at page 320, in his frequently quoted charge to the jury, said: " All the presumptions of law independent of evidence are in favor of innocence; and every person is presumed to be innocent until he is proved guilty." In view of these decisions and the settled rule in this Commonwealth, there was error in omitting all reference to the presumption of innocence. The first sentence of the seventh request was sound law and it was error to refuse to give this instruction.

The defendant was entitled to have the request " The defendant is presumed to be innocent " given to the jury and this exception must be sustained.

*Exceptions sustained.*