### COMMONWEALTH *vs.* CELESTINO MADEIROS.

Norfolk.    January 25, 1926. — March 29, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Homicide. Practice, Criminal,* View, Charge to jury, Requests for rulings. *Evidence,* Admissions and confessions, Competency, Of state of mind, Of malice, Presumptions and burden of proof.

An exception will not be sustained to a refusal by a judge before whom was being tried an indictment for murder, in which was involved an automobile alleged to have been used by the defendant in the commission of the crime, to declare a mistrial merely because, at the time of a view taken by the jury, that automobile was on the scene of the crime and near the point where it was alleged by the Commonwealth to have been

at the time of the crime, if it appears that the incident happened without the knowledge of the district attorney and that at his request the automobile was removed before anything was said or done to draw the attention of the jury at the view to it or to its presence, and where the judge instructed the jury to disregard the whole matter of the automobile, if they saw it or its alleged position, and in that respect to heed only the testimony presented under oath before them.

At the trial above described, it was proper to admit evidence tending to show that, after his arrest, the defendant was taken to the county jail where an alleged accomplice was confined; that the accomplice had made a statement to an officer implicating himself and the defendant in the commission of the crime; that the accomplice repeated this statement in the presence of the defendant, and that thereupon the defendant called him an insulting name and said, "I would like to kill you."

When a defendant while under arrest is charged with a crime by an accusation made in his presence and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the accusation and the reply are admissible in evidence.

There was no error, at the trial above described, in the admission in evidence of statements made by the defendant, shortly after his arrest, to the district attorney and an officer, wherein he gave a false name and made other assertions which were untrue.

Confessions made by the defendant in the indictment above described on two different occasions were *held* rightly to have been admitted in evidence at the trial, they having every appearance of having been free and voluntary; and instructions to the jury with regard thereto were *held* to have been correct and in accordance with the settled practice.

Testimony, at the trial above described, that, during his confinement before trial under two separate indictments, one for murder and one for putting persons in fear for the purpose of stealing from a bank, the defendant sawed the bars of his cell, assaulted the guard and attempted escape, was admissible as tending to show consciousness of guilt: the admission of this testimony was not error merely because it tended to show the commission of another crime, provided it had probative force with respect to the crime charged.

Portions of the charge to the jury at the trial above described, to the effect that, when a defendant by some act done in the commission or attempted commission of some crime of the degree of felony causes the death of a human being, the killing is with malice aforethought and is murder, were *held* to have been correct.

Instructions to the jury at the trial above described to the effect that homicide committed in an attempt to commit robbery, G. L. c. 265, § 17, or the crime described in G. L. c. 265, § 21, was murder in the first degree, were *held* to disclose no error.

At the trial of the indictment above described, subject to an exception by the defendant, the judge charged the jury as follows: "But there is another ground, apart from any question of deliberately premeditated

malice aforethought, upon which the defendant may be found guilty of murder in the first degree. Under the statute, murder, committed in the commission or attempted commission of a crime punishable by death or imprisonment for life, is murder in the first degree, even though there was no deliberately premeditated malice aforethought. If you find beyond a reasonable doubt that at the time of the shooting the defendant was engaged while armed with a dangerous weapon in attempting to commit robbery, and that he either had the intent if resisted to kill or maim the person he was attempting to rob or did in fact wound such person and in the course of such attempted robbery did shoot and kill such person, then the defendant is not only guilty of murder but is guilty of murder in the first degree." *Held*, that such instructions were in accordance with G. L. c. 265, § 1, and contained no error.

Instructions, at the trial above described, defining malice in connection with murder, were *held* to be in accordance with the settled law of this Commonwealth.

An indictment for murder named four as associated with the defendant in the crime. *Held*, that it was not necessary to show that all four named in the indictment participated in the crime.

An exception by the defendant, at the trial of an indictment for murder, to a refusal to give in terms a ruling, "The defendant is presumed to be innocent," which he seasonably had asked for, must be sustained.

INDICTMENT, found and returned on December 4, 1924, charging the defendant, together with Alfred W. Bedard, James F. Weeks, and Harry Goldenberg, with the murder of James A. Carpenter at Wrentham on November 1, 1924.

In the Superior Court, before *Lummus*, J., the defendant Madeiros was tried alone. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following among other rulings:

"2. The defendant is presumed to be innocent.

"3. The presumption of innocence is with the defendant at the beginning of the trial and continues with him through all its stages unless and until evidence is introduced proving his guilt beyond a reasonable doubt."

The trial judge did not give the above rulings in terms.

Material portions of the charge to the jury were as follows:

"The fact that a person is in custody, or is charged with crime, either by complaint or by indictment of the grand jury, is not even the slightest evidence of his guilt, and is not to create any prejudice or unfavorable impression against him in your minds. The grand jury hears only the evidence

for the Commonwealth. The defendant has no opportunity to present any evidence or make any defence before the grand jury. The reason for that is, that the duty of the grand jury is only to see whether there is sufficient evidence to warrant submitting the case to a petit or trial jury, such as you are, for final decision. That final decision is not to be based on suspicion or conjecture but only on the evidence heard by you at the trial. The fact that the defendant has not testified is not to be taken as raising any presumption or inference or prejudice against him. He has the right to remain passive, and to insist that the Commonwealth prove its case beyond a reasonable doubt without explanation or denial by him. . . .

"As I have already told you, in a criminal case the Commonwealth has the burden of proving the guilt of the defendant beyond a reasonable doubt, in order to convict him. By 'proving' a fact, we mean merely making the jury believe it upon the evidence. The quality or degree of the proof is not determined by the volume of evidence or the number of witnesses. It is the weight of the evidence, its strength in inducing belief in the existence of the facts to be proved, that is important. In a criminal case, in order to convict, the existence of a state of facts that, under the law, constitutes the defendant guilty of the crime charged, must be proved, not merely by the preponderance or greater weight of evidence, but beyond a reasonable doubt.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt, nor beyond a whimsical or fanciful doubt, nor proof beyond the possibility of innocence. It is rarely, if ever, possible to find a case so clear that there cannot be a possibility of innocence. If an unreasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction, practically every criminal would be set free to prey upon the community. Such a rule would be wholly impractical, and would break down the forces of law and order, and make the lawless supreme. A reasonable doubt does not mean such doubt as may exist in the mind of a man who is earnestly seeking for doubts or for an excuse to acquit a defendant; but it means such doubt as remains in the mind of a reasonable man who is earnestly seeking the truth. A

fact is proved beyond a reasonable doubt when it is proved to a moral certainty, as distinguished from an absolute or mathematical certainty; when it is proved to a degree of certainty that satisfies the judgment and consciences of the jury, as reasonable men, and leaves in their minds, as reasonable men, a clear and settled conviction of guilt. But if, when all is said and done, there remains in the minds of the jury any reasonable doubt of the existence of any fact which is essential to the guilt of the defendant on the particular charge, the defendant must have the benefit of it, and cannot be found guilty upon that charge. . . .

"There is evidence in this case of a confession by the defendant of his part in the shooting of Mr. Carpenter. He was not compelled by law to make any confession or statement. He had a right to remain silent, and his silence could not be treated as evidence against him. But if he saw fit, in the voluntary exercise of his own will, to confess the crime, his confession is admissible against him. The officer to whom he confessed was under no obligation to warn him that he need not confess or that his confession would be used against him. But a confession is admissible only when freely and voluntarily made. It is not rendered inadmissible merely because the officer suggested that he confess, or asked him to confess; but it is inadmissible when procured by coercion, threats, intimidation, or offer made by an officer or hope held out by an officer, of reward or benefit to result from a confession. In the absence of evidence to the contrary, a confession is presumed to be voluntary. Although the confession of the defendant has been received in evidence, you will disregard it unless you find that it was a voluntary confession within the meaning of the law as I have just stated it.

"Evidence has been introduced of a statement by one Bedard, alleged to have been a confederate of the defendant, and of the defendant's reply thereto, while the defendant was under arrest. If a defendant while under arrest is charged with crime by an accusation made in his presence and hearing, and he remains silent or unequivocally denies it, his silence or denial is not admissible in evidence against

him, and if it gets into the case should be given no weight against him. But if he makes an equivocal reply, such reply, so far as in the judgment of the jury it amounts to an admission of the accusation against him or any part of it, may be treated as evidence against the defendant. . . .

"Murder is the killing of a human being, without legal justification or excuse, without such extenuation as may reduce the crime to manslaughter, but with what is called in the law 'malice aforethought.' This 'malice aforethought' is a technical expression in the law, which has come down to us from past generations, and needs definition. 'Malice' as used in that expression does not necessarily imply ill will towards the person killed. Any intentional killing of a human being without legal justification or excuse, with no extenuating circumstances sufficient in law to reduce the crime to manslaughter, is 'malicious' within the meaning of that expression, and is murder and not manslaughter. The word 'aforethought' in the expression 'malice aforethought' does not require deliberately premeditated malice or intention to do wrong. If the killing was intentional, though the act followed the thought immediately, without time for deliberation or reflection, and there was no legal justification, excuse or extenuation, the killing was with 'malice aforethought' within the meaning of that very technical and somewhat misleading expression of the law, and is murder and not manslaughter.

"A killing may be malicious and consequently murder even though the slayer did not wish to cause death. . . . If a man intentionally and without legal justification, excuse or extenuation uses upon the body of another a force (for example, a bullet from a revolver of large calibre) that as used will probably do grievous bodily harm to that other and will create a plain and strong likelihood that that other will die as a result, the act is malicious within the meaning of the law, even though the doer of that act was indifferent as to whether death would result, or wished and hoped that death would not result.

"And an unlawful killing may be with 'malice aforethought' within the meaning of that technical phrase, and

consequently murder, in some cases where there was no intention to endanger life or even to injure. Where a defendant is engaged in the commission or attempted commission of some crime of the degree of felony — that is, a crime punishable by death or imprisonment in the state prison — and some act done by him in the commission or attempted commission of such felony results in the death of some person, the killing is with 'malice aforethought' within the meaning of the law, and the killing is murder, although the defendant did not intend to kill or even to harm the deceased. The intention to commit some other felony amounts to 'malice aforethought' making the crime murder. Accordingly, a man burning his own building to defraud an insurance company is guilty of murder if some person happens to perish in the flames. A man who commits rape upon a woman, though he be ever so careful not to hurt her, is guilty of murder if the horror and shock of the deed in fact cause her death. A burglar who breaks and enters a dwelling house in the night time with intent to steal therein and binds and gags his victim and thus unintentionally causes his death, is guilty of murder. And so in this case if the defendant Madeiros was at the time of the shooting engaged in the commission or attempted commission of a felony, and in the course thereof pointed a loaded revolver at Mr. Carpenter for the purpose of intimidating him and facilitating the commission of the felony, and such revolver while so pointed was discharged and the bullet caused Mr. Carpenter's death, the defendant Madeiros is guilty of murder. . . .

"If the defendant Madeiros at the time of the shooting was engaged in an attempt to steal personal property from the person of someone who owned or had the custody of it, against his will, by means of force and violence upon the owner or custodian of it or by assaulting the owner or custodian of it and putting him in fear, he was attempting to commit the felony of robbery. . . . Robbery is a felony under our statutes, being punishable by imprisonment in the state prison.

"There is another section of our statutes which has a bearing on this case. G. L. c. 265, § 21, provides as follows,

omitting immaterial words: — 'Whoever, with intent to commit larceny or any felony . . . attempts or threatens to kill . . . maim, injure, or wound, or puts any person in fear, for the purpose of stealing from a building, bank, safe, vault or other depository of money, bonds or other valuables . . . shall, whether he succeeds or fails in the perpetration of such larceny or felony, be punished by imprisonment in the state prison for life or for any term of years.' A violation of this statute, being punishable by imprisonment in the state prison, is a felony.

"Accordingly, I repeat that if the defendant Madeiros at the time of the shooting was engaged in the commission or attempted commission of a robbery or of a violation of G. L. c. 265, § 21, just read, and in the course thereof pointed a loaded revolver at Mr. Carpenter for the purpose of intimidating him and facilitating the commission of such felony or attempted felony, and such revolver while so pointed was discharged and the bullet caused Mr. Carpenter's death, the defendant Madeiros is guilty of murder. . . .

"[Following instructions as to murder committed with deliberately premeditated malice aforethought] But there is another ground, apart from any question of deliberately premeditated malice aforethought, upon which the defendant Madeiros may be found guilty of murder in the first degree. Under the statute, murder committed in the commission or attempted commission of a crime punishable by death or imprisonment for life, is murder in the first degree, even though there was no deliberately premeditated malice aforethought. If you find beyond a reasonable doubt that at the time of the shooting the defendant Madeiros was engaged while armed with a dangerous weapon in attempting to commit robbery, and that he either had the intent if resisted to kill or maim the person he was attempting to rob, or did in fact wound such person, and in the course of such attempted robbery did shoot and kill such person, then the defendant Madeiros is not only guilty of murder but is guilty of murder in the first degree, for such a robbery, if committed, would have been punishable by imprisonment for life. G. L. c. 265, § 17. And furthermore, under another section of the

statute, if you find beyond a reasonable doubt that at the time of the shooting the defendant Madeiros was engaged in threatening to kill, maim, injure, or wound any person, or in putting any person in fear, for the purpose of stealing from a building, bank, safe, vault or other depository of money, bonds, or other valuables, and in the course of such act of so threatening or putting in fear did shoot and kill the deceased, then the defendant Madeiros is not only guilty of murder but is guilty of murder in the first degree, for such act of so threatening or putting in fear is punishable by imprisonment for life. G. L. c. 265, § 21. If the evidence shows beyond a reasonable doubt that the defendant is guilty of murder committed in the commission or attempted commission of either of these crimes just mentioned which are punishable by imprisonment for life, then the murder is murder in the first degree, and your verdict should record the truth, in accordance with your oaths."

The defendant was found guilty of murder in the first degree, and alleged exceptions.

The case was argued at the bar in January, 1926, before *Rugg,* C.J., *Pierce, Crosby, Wait, & Sanderson,* JJ., and afterwards was submitted on briefs to all the Justices.

*F. J. Squires,* for the defendant.

*D. P. Ranney,* Assistant District Attorney, for the Commonwealth.

Rugg, C.J. The defendant and three others were indicted jointly for murder. One of the other three has not been apprehended: the cases of two have been disposed of, and the defendant alone was tried.

The judge, on the motion of the Commonwealth acquiesced in by the defendant, ordered that the jury take a view of the premises where the murder was alleged to have been committed. The prosecuting officer, prior to the view, in his opening, stated that the defendant and his companions in the attempt to rob the Wrentham Bank stole a new Hudson touring car and on the day of the homicide came to the bank in Wrentham in the car, left one of their number sitting in the car at a place on the street described by him and indicated on a chart shown to the jury, while the defendant and the

other two entered the bank, where the cashier was alleged to have been murdered by the defendant, and the three returned to the automobile and made their escape. The jury were then taken to the scene of the crime in Wrentham, where the automobile, alleged to have been used by the defendant and his companions in the commission of the crime, had been placed at the point described in the opening. Confessedly this was without the knowledge of the prosecuting officer, at whose request the automobile was removed before anything was said or done to draw the attention of the jury at the view to the automobile or its position, although it was plainly in the sight of the jury. Later the place was pointed out to the jury. On the return of the jury to the court room, the defendant asked the judge to declare a mistrial and to discharge the jury on account of this incident. This request was denied and the trial judge in appropriate words straightway instructed the jury to disregard the whole matter of the automobile, if they saw it, or its alleged position, and in that respect to heed only the testimony presented under oath before them. In all this there was no error of law. It is to be presumed that the jury followed the instructions. There is no ground for argument that the defendant suffered harm. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 29.

The defendant after his arrest was taken to Dedham jail, where was confined Bedard, one of those jointly indicted with the defendant for this crime. Bedard had made a statement to an officer implicating himself and the defendant in the commission of the crime. He repeated this statement in the presence of the defendant. At its conclusion the defendant called him an insulting name and said, "I would like to kill you." This was admissible in evidence. When a defendant while under arrest is charged with a crime by an accusation made in his presence, and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the question or statement and the answer or comment are admissible. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71, 74. *Common-*

*wealth* v. *Gangi,* 243 Mass. 341, 345.   *Rex* v. *Christie,* [1914] A. C. 545, 564, 565.

There was no error in the admission in evidence of statements made by the defendant to the district attorney and an officer shortly after his arrest, wherein he gave a false name and made other assertions which were untrue. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 199. *Commonwealth* v. *Sherman,* 234 Mass. 7, 12.

The confessions of the defendant made in substance on two different occasions were rightly admitted in evidence. There was nothing to indicate that they were not voluntary. The officer asked the defendant on one occasion if he did not want to tell the truth about the shooting, and on the other gave him adequate warning and explanation of the statement asked for, and on neither occasion were threats used or promises of reward offered or any other improper inducement held out. The statements had every appearance of being free and voluntary. The charge to the jury correctly stated the law respecting confessions and the use to be made of them. All this was in conformity to the settled practice. *Commonwealth* v. *Morey,* 1 Gray, 461. *Commonwealth* v. *Russ,* 232 Mass. 58, 69. *Commonwealth* v. *Festo,* 251 Mass. 275, 280. *Commonwealth* v. *Preece,* 140 Mass. 276, 277.

Testimony that during his confinement before trial the defendant sawed the bars of his cell, assaulted the guard and attempted escape, was admissible as tending to show consciousness of guilt. *Commonwealth* v. *Brigham,* 147 Mass. 414. Although not shown on the record, it was agreed at the argument that the defendant was at the time under two separate indictments, one for murder and one for putting persons in fear for the purpose of stealing from a bank. These circumstances did not render this evidence inadmissible. Its weight was for the jury.

The admission of this testimony was not error merely because it tended to show the commission of another crime, provided it had probative force with respect to the crime charged. *Commonwealth* v. *Johnson,* 199 Mass. 55, 59. *Commonwealth* v. *Feci,* 235 Mass. 562, 567.

The portion of the charge to the effect that when a defendant by some act done in the commission or attempted commission of some crime of the degree of felony causes the death of a human being, the killing is with malice aforethought and is murder, was correct. It was sufficiently amplified. It was in accordance with the principles set forth in *Commonwealth* v. *Chance,* 174 Mass. 245, 252. *Commonwealth* v. *Pemberton,* 118 Mass. 36, 43. *Commonwealth* v. *Pentz,* 247 Mass. 500, 508.

There was no error in the charge to the effect that homicide committed in an attempt to commit robbery, G. L. c. 265, § 17, or the crime described in G. L. c. 265, § 21, was murder in the first degree. All that was said in that respect was in accordance with G. L. c. 265, § 1, which defines murder in the first degree as "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life." *Commonwealth* v. *Pemberton,* 118 Mass. 36, 42. *Commonwealth* v. *Chance,* 174 Mass. 245, 252, 253.

The definition of malice in connection with murder was in accordance with the settled law of the Commonwealth. *Commonwealth* v. *Bedrosian,* 247 Mass. 573, 576, and cases there collected. *Commonwealth* v. *Pierce,* 138 Mass. 165, 178.

It was not necessary to show that all four named in the indictment participated in the crime. The defendant alone might be convicted although four were indicted jointly. *Commonwealth* v. *Jencks,* 138 Mass. 484, 488.

A ruling was seasonably requested to the effect that the defendant is presumed to be innocent. It is the established practice to give such instruction, which has the great weight of the authority of Chief Justice Shaw. *Commonwealth* v. *Kimball,* 24 Pick. 366, 374. *Commonwealth* v. *Williams,* 6 Gray, 1, 4. *Commonwealth* v. *Webster,* 5 Cush. 295, 320. That practice has been recently reaffirmed in explicit language in three decisions where the point was expressly adjudged. It is imbedded in our law. *Commonwealth* v. *Anderson,* 245 Mass. 177, 190. *Commonwealth* v. *DeFran-*

*cesco,* 248 Mass. 9, 13, 14. *Commonwealth* v. *Johnson,* 250 Mass. 320, 323, 324. To the same effect see 4 Wigmore on Ev. (2nd ed.) § 2511, 1 Steph. Crim. Law, 397, 2 Russ. Crimes, (8th ed.) 1896. This presumption is not evidence. It does not run with the defendant through the trial and continue with him through all its stages. Requests of that nature were denied rightly. The presumption of innocence may be defined briefly. "Nothing is required beyond a plain statement that the presumption of innocence means that the finding of an indictment by the grand jury or the record on an appeal on a complaint from a finding of guilty in a district court are not to be regarded as circumstances tending to criminate the defendant or creating against him unfavorable impressions, and that he is not to be found guilty upon suspicion or conjecture but only upon evidence produced in court." 248 Mass. at page 13. Instructions of this nature were given in the case at bar. The jury were told that the fact that a person is in custody or is charged with crime by indictment is not even the slightest evidence of his guilt and is not to create any prejudice or unfavorable impression against him, and their decision is not to be based on suspicion or conjecture but only upon evidence heard at the trial. Instructions of the same general nature were also given in *Commonwealth* v. *Anderson,* 245 Mass. 177, and *Commonwealth* v. *Johnson,* 250 Mass. 320, but in each case it was held that the exceptions must be sustained because of refusal to give the instruction that at the outset of the trial the defendant was presumed to be innocent. The same result must follow in the case at bar. It is the only error disclosed on the record.

*Exceptions sustained.*