COMMONWEALTH *vs.* JAMES B. TILLEY & another.

Suffolk.    April 1, 1940. — June 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Possession of Implements for Unlawful Purpose.    Statute,* Construction.

A locked automobile trunk is a "depository" and within the provisions of G. L. (Ter. Ed.) c. 266, § 49.

The intended uses, proof of one of which is necessary to conviction under G. L. (Ter. Ed.) c. 266, § 49, of possession of implements therein described, are broadly stated in the statute: there is no limitation to use for burglary.

Conditions not in existence or thought of at the time of the enactment of a statute may be covered thereby if within the scope of its language and purpose.

The title of a statute cannot limit language of plain meaning therein.

Unauthorized possession of keys delivered by a manufacturer of keys to defendants, afterwards indicted under G. L. (Ter. Ed.) c. 266, § 49, and specially manufactured to fit automobile trunks in which salesmen carried and left goods, and an attempt by one defendant in the presence of the other to secrete them behind a door on the approach of a police officer, warranted a conviction of both defendants.

INDICTMENT, found and returned on November 9, 1939.

The defendants were found guilty at a trial before *Williams,* J.

*W. H. Lewis,* (*M. Glaser & H. Wald* with him,) for the defendants.

*J. T. Cassidy,* Assistant District Attorney, for the Commonwealth.

RONAN, J.    The defendants were convicted after a trial upon an indictment charging a violation of G. L. (Ter. Ed.) c. 266, § 49; and alleging that they knowingly had in their possession certain machines, tools and implements adapted and designed for cutting through, forcing and breaking open

buildings, rooms, vaults, safes and other depositories, in order to steal therefrom such money and other property as might be found therein; that they knew that such machines, tools and implements were adapted and designed for such purposes; and that they intended to use them for this purpose. The defendants excepted to the refusal to grant their motions for directed verdicts of not guilty.

There was evidence that automobile manufacturers supply keys for the ignition locks, door locks and trunk locks. These keys are manufactured in series, each series having a special design and a special code number. New keys may be obtained from the manufacturers or from a locksmith who has been supplied with a code book and with the machinery for stamping out the various designs of keys in the different series. One Brummitt, a locksmith, had such a code book and stamping machinery. On six occasions during the two months preceding their arrest, the two defendants had called at the shop of this locksmith and secured from him keys that he had made in accordance with the code numbers given to him by the defendants. On September 29, 1939, two police officers saw the defendant Tilley standing on a stairway that led from the street to the front vestibule of an apartment house. The other defendant, Carro, was a few feet away talking to a third person. Upon the approach of the officers Tilley went up the stairs and disappeared into the vestibule. When the officers reached the front door, which was partly open and was against Tilley's back, they saw a bundle containing six automobile keys on the floor behind the partly opened door. Each of these keys had the name Brummitt upon it and all were made in his shop. Each of the keys had a tag which bore a number. Each of four of these keys would lock and unlock the ignition and doors of an automobile registered under the same number as the number upon the tag attached to that key. The two remaining keys would unlock respectively the trunks with which two of these automobiles were equipped. All of these four automobiles were owned and used by salesmen, who were accustomed to carry their goods in their automobiles and

to leave them there when they made calls upon their customers. None of the owners of these automobiles had authorized either defendant to have the keys manufactured.

The Commonwealth contended that the defendants had procured the keys for the purpose of entering these automobiles and opening the trunks in order to steal the personal property they contained. The defendants contended that the automobiles and trunks were not depositories of the kind included within the statute; that the defendants did not have possession of the keys; and that, if they did, then they could not have had possession with intent to commit burglary — which they urge is required for a conviction — because breaking and entering an automobile or opening the trunks is not burglary.

The statute G. L. (Ter. Ed.) c. 266, § 49, simply forbids the possession by any one of tools and implements adapted and designed for accomplishing the described acts, knowing the same to be adapted and designed for such purposes, with the intent that they should be so utilized. It may be that the enforcement of the statute will result in the prevention of burglary, by the apprehension of those who intended to commit the offence and who were equipped with the implements suitable to aid them in effecting the crime. It was this aspect of the statute that the court had in mind when, in the course of its opinions in cases where the evidence showed that possession was accompanied by an intent to commit burglary, it was said, in substance, that the offence charged was the possession of burglarious implements with the guilty intent and knowledge. *Commonwealth* v. *Tivnon,* 8 Gray, 375, 379. *Commonwealth* v. *Anderson,* 245 Mass. 177, 184. Those decisions were undoubtedly correct in view of the evidence and the issues presented, but neither of them is an authority for the proposition that there can be no violation of the statute unless the defendant intended to use the tools and implements to commit burglary. That question was not raised in either case.

The statute in question makes no mention whatever of burglary. It defines every ingredient constituting the

offence.  An intent to use the tools or implements to commit burglary is not one of them.  The statute aims to prevent the performance of acts which, if committed, would not amount to burglary.  For example, the breaking open of chests and trunks located in a building has been held not to constitute burglary.  2 East P. C. 488.  Bennett & Heard, Leading Criminal Cases (1st ed.) 531, 532.  *State* v. *Wilson*, Coxe, 439.  2 Wharton, Criminal Law (12th ed.) § 978.  The breaking open of a vault or safe in order to steal the contents, when access was gained to the place where it was located without breaking or entering, would not, in the absence of a statute, establish the commission of burglary.  *Commonwealth* v. *Trimmer*, 1 Mass. 476.  *Commonwealth* v. *Strupney*, 105 Mass. 588.  Compare *Commonwealth* v. *Lowrey*, 158 Mass. 18.

The statute punishes one in possession of tools and implements adapted for and intended to be used in stealing any property that has been placed in the protection of a building, room, vault, safe or other depository where access to the property by an intruder is facilitated or accomplished by the use of such tools or implements.

Automobiles manufactured with a trunk attached to or built into the rear of the body have been in general use for several years.  When the statute was first enacted, St. 1853, c. 194, automobiles were not in use and consequently the Legislature could not have had automobile trunks in mind in enacting this statute.  That circumstance might perhaps be conclusive if the statute defined a depository and an automobile trunk could not come within the definition or if the term depository was so specific and concrete that it could not reasonably be applied to such a trunk.  *Doherty* v. *Ayer*, 197 Mass. 241.  *Commonwealth* v. *Goldman*, 205 Mass. 400.  *Libby* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 522.  The object of a statute may be so general and its language so broad as to reach conditions fairly coming within its intent and sweep although such conditions did not come into existence until years after its enactment.  "Statutes framed in general terms commonly look to the future and may

include conditions as they arise from time to time not even known at the time of enactment, provided they are fairly within the sweep and the meaning of the words and falling within their obvious scope and purpose." *Commonwealth* v. *Welosky,* 276 Mass. 398, 403. *Ansell* v. *Boston,* 254 Mass. 208. *Gallagher* v. *Wheeler,* 292 Mass. 547, 554. There is nothing in the phraseology of the statute that indicates that its operation should be confined to conditions identical with those existing at the time of its passage or that it should not apply to a depository for personal property now in common use. The aim of the statute is to safeguard property kept for safe-keeping, even though temporarily, in an automobile trunk as much as it is to safeguard property contained in a vault or safe, where, in either case, the property is secure until the protection of its depository is destroyed by breaking it open by a tool or implement in the hands of one wrongfully seeking possession of the property.

The statute enumerates the places and objects admission or access to which may be gained by the tools and implements whose possession for that purpose is forbidden. The contemplated use of the tools and implements must be the "cutting through, forcing or breaking open a building, room, vault, safe or other depository." This statute does not require the depository to be located in a building or that it be annexed to the real estate. It can hardly be supposed that the possession of tools designed and suitable for breaking open a safe in a railroad car or in an automobile equipped for the transportation of money and securities, with intent to employ them for that purpose, would not come within the statute. Neither do we think that the result would be any different if instead of a safe an automobile trunk were used. The statute manifests no intention that the depository must be one substantially similar to a vault or safe, but extends to whatever is commonly used for the safe-keeping of money or other personal property. See *Commonwealth* v. *Tivnon,* 8 Gray, 375. The jury in the present case could find, upon the evidence, that the trunks were used for the safe-keeping

of goods and that the defendants had the keys manufactured for the purpose of stealing these goods.

We are not unmindful that the original statute, St. 1853, c. 194, was entitled "An Act concerning Implements of Burglary." The title may be considered in determining the construction of a statute whose terms are such as to render its meaning ambiguous and uncertain, but the scope and extent of a statute that plainly forbids the commission of definite acts cannot be restricted by the title to include only such acts as are preparatory to the commission of another and distinct offence. The statute requires that the possession of the tools and implements be accompanied by an intent to use them to accomplish any one of certain described acts, and that intent cannot, by reference to the title, be interpreted to mean only an intent to commit a specific felony. The title to the statute now in question cannot limit its operation to a field more narrow or confined than that established by the statute itself. *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, and cases cited.

Two of the keys could be found to have been especially made for the purpose of opening these trunks. Indeed, there is nothing to show that they could be used for any other purpose, except possibly for trunks having keys of the same serial number, although it was not necessary for the Commonwealth to prove that they could not be used for an honest and legitimate purpose. *Commonwealth* v. *Tivnon,* 8 Gray, 375, 380.

There was evidence that the keys were procured and owned by both defendants. It could be found that the keys were delivered by the locksmith to the defendants and that they had been given actual possession of them. The jury could further find that the possession by one was for himself and the other defendant. The jury could find that the keys were in the personal possession of Tilley who placed them behind the door upon the approach of the officers, and that while there, and before they were discovered by the officers, they were in the constructive possession of both defendants, each of whom had access to ·

the place and could exercise control and dominion over the keys. *Commonwealth* v. *Conlin,* 188 Mass. 282. *Commonwealth* v. *Johnson,* 199 Mass. 55.

Keys expressly made to fit a particular lock for the purpose of wrongfully gaining access to a depository in which goods were kept, in order to steal them, are tools and implements of the kind and character described in the statute. In *Commonwealth* v. *Tivnon,* 8 Gray, 375, the indictment charged the defendants with having certain articles in their possession including a number of false and skeleton keys, and it was held that the possession, with the unlawful intent of using any one of the implements, was sufficient. The opening of these automobile trunks by the use of such a key by the defendants would constitute the forcing or breaking open described in the statute. A false or skeleton key has been held to be a tool or an implement in other jurisdictions where there is a statute similar to our own. *State* v. *Kappen,* 191 Iowa, 19. *Johnson* v. *Commonwealth,* 240 Ky. 123. *People* v. *Ferrise,* 219 Mich. 471. *Ex parte Roberts,* 166 Mo. 207. *Scott* v. *State,* 91 Wis. 552. *State* v. *Fitzpatrick,* 141 Wash. 638.

There was no error in admitting the keys in evidence and leaving to the jury the question whether upon the evidence — which was sufficient for the purpose — they were satisfied that these keys were identified as those that the defendants had had manufactured by the locksmith. *Commonwealth* v. *Scott,* 123 Mass. 222. *Commonwealth* v. *Sacco,* 255 Mass. 369, 431.

In the opinion of a majority of the court the evidence was sufficient to support the single offence alleged in the indictment and there was no error in refusing to direct a verdict of not guilty.

*Exceptions overruled.*