COMMONWEALTH *vs.* STEPHEN F. KRASNER.

Middlesex.   December 7, 1970. — February 25, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Burglarious Instruments.   Trespass.   Statute,* Construction.   *Pleading,
Criminal,* Indictment or complaint.   *Words,* "Any other crime."

St. 1853, c. 194, penalizing the making or possession of tools or imple-
ments "adapted and designed for . . . forcing or breaking open any
building, room, vault, safe or other depository, in order to steal there-
from . . . money or other property, or to commit any other crime,"
was not intended to be applied only to the making or possession of
such tools or implements in order to commit theft or some other crime
of an acquisitive nature, and an indictment substantially in the statu-
tory form for a prosecution under G. L. c. 266, § 49, as amended, which
has its origin in St. 1853, c. 194, charging that the defendant "did
make an implement, to wit: a battering ram, adapted and designed
for breaking open a room, and that such implement was used to break
into the room of" the president's office in a university "to commit the
crime of trespass," set out an offence.   SPALDING, J., dissenting.

INDICTMENT found and returned in the Superior Court on
February 5, 1970.

A motion to dismiss the indictment was heard by
*Moynihan,* J.

*Terence M. Troyer,* Legal Assistant to the District At-
torney, for the Commonwealth.

*Norman S. Zalkind* for the defendant.

CUTTER, J.   An indictment (see G. L. c. 266, § 49) charged
that Krasner on January 15, 1970, at Cambridge, "did
make an implement, to wit: a battering ram, adapted and
designed for breaking open a room, and that such imple-
ment was used to break into the room of the President's
office of Massachusetts Institute of Technology, to commit
the crime of trespass knowing the same to be adapted and
designed for the purpose aforesaid, with intent to use or
employ or allow the same to be used or employed for such
purpose."   A Superior Court judge dismissed the indictment

on the ground that it "does not set out a crime." The Commonwealth appealed under G. L. c. 278, § 28E (inserted by St. 1967, c. 898, § 1).

General Laws c. 266, § 49 (as amended by St. 1966, c. 269, § 1), provides: "Whoever makes . . . or knowingly has in his possession, an engine, machine, tool or *implement adapted* and *designed for* cutting through, forcing or *breaking open a building, room,* vault, safe or other depository, in order to steal therefrom money or other property, *or to commit any other crime,* knowing the same to be adapted and designed for the purpose aforesaid, *with intent to use . . .* or allow the same to be used . . . for such purpose . . . shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than . . . [$1,000] and imprisonment in jail for not more than . . . [2½] years" (emphasis supplied). Trespass is made a criminal offence by G. L. c. 266, § 120 (as amended through St. 1969, c. 463, § 2).[1]

The Commonwealth contends that the words "or to commit any other crime" include the crime of trespass. The trial judge ruled that the statute was designed "to prevent crimes of an acquisitive nature by punishing the making or possession of instruments designed and intended for use in the perpetration of such crimes." In addition, he concluded that in view of the heavy penalty permitted under § 49, as contrasted with the relatively light penalty provided by § 120, it was unlikely that the Legislature intended to impose severe punishment under § 49 for conduct designed to assist commission of a misdemeanor, such as trespass.

1. Chapter 266, § 49, was first enacted by St. 1853, c. 194, entitled, "An Act concerning Implements of Burglary."

[1] Section 120, as amended in 1969, reads: "Whoever, without right, *enters or remains in or upon* the dwelling house, buildings . . . or enclosed land . . . of another, after having been forbidden so to do by the person who has the lawful control of said premises, either directly or by notice . . . shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days, or both. A person who is found committing such trespass may be arrested by a . . . police officer and kept in custody in a convenient place, not more than twenty-four hours, Sunday excepted, until a complaint can be made against him for the offence, and he be taken upon a warrant issued upon such complaint" (emphasis supplied).

The statute appears to have originated (1853 House Journal [vol. 75], p. 629, April 11) in an order "that the committee [on the judiciary] consider the expediency of providing for the punishment of persons making [b]urglar tools, or having such in their possession, *with intent that they shall be used*" (emphasis supplied). A bill, apparently in the form finally adopted, was reported from the Committee on the Judiciary and enacted in both Houses[2] without any mention in the Journals of amendments to the bill. In the Journals (see fn. 2) the bill consistently was described as the bill "Concerning Implements of Burglary," the title appearing on the statute itself. The original House order (as contrasted with the entry in the Journal) describes it as designed to "punish persons having burglar tools in their possession with intent to *use them unlawfully*" (emphasis supplied).[3]

2. A majority of the court are of opinion that the 1853 act was not confined to making or possession of tools of burglary by a person intending to use them to commit theft or some other crime of an acquisitive nature. Because the language of the statute ("or to commit any other crime") is plain, it should be interpreted in accordance with the natural meaning of the words. See *Johnson* v. *District Atty. for the No. Dist.* 342 Mass. 212, 215. The words "any other crime" must be given their reasonable and normal effect or they will

---

[2] See 1853 House Journal, pp. 680, 762; 1853 Senate Journal, pp. 529, 538, 549, 551.

[3] In the manuscript engrossed version of the statute in the State Archives, the words "or to commit any other crime" have been inserted in the margin, in lettering smaller than that of the text, but in a hand apparently the same as that in the balance of the text. Also on the engrossed copy is a reference to Vermont, Compiled Stat. (1851), p. 546, § 6. Our 1853 statute appears to have been copied almost verbatim from the Vermont statute. The words "or to commit any other crime" do not appear in the Vermont statute. Although no reference to amendment of the bill appears in the Journals, this addition, at some stage (perhaps in committee) of the legislative process, indicates a definite and conscious legislative purpose that the "intent" aspect of the offence be broader than merely acquisitive crimes. So far as pertinent, the 1853 statute read, "Every person who shall make . . . or knowingly have in his possession, any engine, machine, tool or implement, adapted and designed for cutting through, forcing or breaking open any building, room, vault, safe, or other depository, in order to steal therefrom any money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ or allow the same to be used or employed for the purpose aforesaid; shall be punished . . . ."

have no effect at all. *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 352 Mass. 617, 618. This interpretation gains some support from the legislative history outlined above.

There is no occasion to resort to canons of construction or to the title of the act as an aid to interpretation. The words "of burglary" in the 1853 title may be regarded as being merely descriptive of the prohibited tools and other instruments and not of their intended use. In any event the "title to . . . [a] statute . . . cannot limit its operation to a field more narrow . . . than that established by the statute itself." See *Commonwealth* v. *Tilley,* 306 Mass. 412, 417.

The words describing the places to be entered, viz. "building, room, vault, safe, or other depository" do not indicate to us any legislative purpose to limit, to theft and other acquisitive crimes, the criminal intent proscribed by the statute. The quoted language refers not only to places where goods susceptible of theft may be found or deposited but also to places (buildings and rooms) which humans ordinarily occupy. Nothing in the 1853 statute or its history suggests that the Legislature was not as concerned about use of an implement (e.g. a battering ram) to enter an inhabited room to commit a misdemeanor (or even a more serious depredation or offence, e.g. arson, rape, or assault) as it was with situations where the prospective entrant's intention was to steal. The statutory language was not restricted. We see no basis for the application of the principle of ejusdem generis.[4]

One intending to break into a room merely to occupy the premises by a "sit-in" to the discomfort or exclusion of the usual occupant, or for more violent purposes (e.g. to destroy evidence, or to engage in some form of "protest"), is committing an offence within the term "any other crime,"

---

[4] The words "or other depository" seem to us to have been inserted to broaden the word "safe" and not to limit the more general earlier words "building" and "room." Also, in view of the plain language of the statute ("or to commit any other crime"), the principle that criminal statutes are to be strictly construed has no application. See *Lustwerk* v. *Lytron, Inc.* 344 Mass. 647, 653.

as fully as if a theft were his purpose. The perpetrator of such an offence, using or intending to use the tools of a burglar to commit it, must be held to know that he is violating a statute. The Legislature has said, we think plainly, that he may suffer the same consequences as those visited upon one who intends to be a burglar.

3. The trial judge suggested that the Legislature may have had no intent to impose the penalty stated in § 49 "for conduct designed to facilitate the commission of a petty misdemeanor such as trespass." [5] This suggestion runs counter to the plain statutory language. The offence proscribed in effect is making or possession of burglar's instruments intended to be used for any crime. One fairly obvious evil of such an offence is the risk of violence implicit in the use of some of the tools and instrumentalities covered by § 49. The present case involves a battering ram designed to achieve an illegal entry. Certainly this was an implement "adapted . . . for . . . breaking open a . . . room." See *Commonwealth* v. *Jones*, 355 Mass. 170, 176–177. Making or possessing such an implement, with the intent to use it to invade the house, room, or office of a college president or any other citizen, or to violate his privacy, creates a risk of serious public disorder and is likely to lead to violent resistance. There is nothing improbable about a legislative determination that a serious penalty should be imposed for making or possessing instruments intended for use in committing either a then existing or future misdemeanor which may result in violence.[6]

---

[5] The same contention may be made with respect to the misdemeanor defined in G. L. c. 266, § 16A, originally inserted by St. 1945, c. 229, as amended by St. 1966, c. 408 ("Whoever . . . breaks and enters a building . . . with intent to commit a misdemeanor shall be punished by a fine of not more than . . . [$200] or by imprisonment for not more than six months, or both"). Although § 49 and § 16A appear in the same chapter, they were originally enacted at widely different times and cover somewhat different subject matter.

[6] Of course, the entry alone is not the only trespass which may take place. Continued occupation by the invader, with its continuing risk of violence, would also be an intended trespass which could be proved under this indictment. Section 49 specifies only maximum punishments, so the Legislature probably considered that all circumstances would be taken into account in sentencing persons convicted under the section, including the nature of the intended crime.

4. We assume that, in the past, § 49 and its predecessors have been employed largely to prosecute those making or possessing burglar's equipment with a view to theft of some type. See e.g. *Commonwealth* v. *Anderson,* 245 Mass. 177, 184–185; *Commonwealth* v. *Tilley,* 306 Mass. 412, 414–417; *Cortellesso* v. *Commonwealth,* 354 Mass. 514, 516, 522. That, however, does not mean that § 49 must be confined to such cases. As was said in the *Tilley* case (at pp. 415–416), "The object of a statute may be . . . so broad as to reach conditions fairly coming within its intent and sweep although such conditions did not come into existence until years after its enactment." Now that a case, which involves no theft, has arisen within the scope of the words "or to commit any other crime," we think that § 49 must be applied as broadly as the natural import of the words indicate the application should be.

5. The form of the indictment is sufficient. It conforms substantially to the form provided by G. L. c. 277, § 79, for a prosecution under § 49. It has been reasonably adapted to substitute the offence of trespass for that of theft. See also G. L. c. 277, § 35A.

6. The order dismissing the indictment is reversed. The case is to stand for further proceedings in the Superior Court.

*So ordered.*

SPALDING, J. (dissenting) The court today remolds a statute, previously used only as a shield for the protection of the public against burglars, into a sword to be used against trespassers. In my view, neither the statutory language nor the legislative history supports this interpretation.

The majority rest their conclusion mainly on the premise that the meaning of the phrase "or to commit any other crime" as used in the statute is "plain" and therefore resort to canons of construction is unnecessary. I disagree. The doctrine of ejusdem generis has been consistently applied by this court in similar situations to interpret statutes, and I would apply it here to limit the statute's reach, as the trial judge ruled, to crimes of an acquisitive nature.

A number of examples are illustrative. In *Commonwealth* v. *Dejardin,* 126 Mass. 46, the statute in question made it a criminal offence to publish, sell or distribute "any book, pamphlet, ballad, printed paper, *or other thing . . .* [which contains obscene matter]" (emphasis supplied). We said there that the maxim noscitur a sociis (the equivalent of ejusdem generis) should be applied to determine the meaning of "or other thing." In *Babcock Davis Corp.* v. *Paine,* 240 Mass. 438, the statute referred to "heating apparatus, plumbing goods, ranges or *other personal property*" (emphasis supplied). We held, at pp. 440–441, that ejusdem generis applied to limit the statute's application to items of personal property similar to those enumerated. In *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 727, the question was raised by a statute that applied only to "trusts created by will or other written instrument." The phrase, "or other written instrument," had been added by amendment, and the question was as to the meaning of the amending words. We held that they "must be interpreted to mean written instruments of the same kind and nature." Other cases to the same effect are: *Stetson* v. *Kempton,* 13 Mass. 271, 278–280, *Brailey* v. *Southborough,* 6 Cush. 141, *Wall* v. *Platt,* 169 Mass. 398, 406, *Becker Transp. Co.* v. *Department of Pub. Util.* 314 Mass. 522, 526, and *Salvation Army of Mass. Inc.* v. *Board of Appeal of Boston,* 346 Mass. 492, 495.

The purpose of the doctrine is to give meaning to *all* the words of the statute. In order to avoid treating the specific words as surplusage, effect is given to both the specific and general words by treating the specific words as indicating a class, and the general words as extending the provisions of the statute to everything embraced in that class. Sutherland on Statutory Construction (3d ed.) § 4909, pp. 395–400. The reasoning of the majority that the words "or to commit any other crime" were added to the text "in lettering smaller than that of the text," to vary it from its Vermont model, misses the point. If, as the majority hold, the Legislature meant to cover "any crime," it could have effectively done so by not only adding the language it did, but also by omit-

ting the language, "to steal therefrom money or other property." Since the Legislature chose to leave this language in the statute, the doctrine of ejusdem generis should be applied; otherwise the specific words become surplusage.

It is settled law that criminal statutes are to be strictly construed. *Commonwealth* v. *Paccia,* 338 Mass. 4, 6. *United States* v. *Boston & Maine R.R.* 380 U. S. 157, 160. Application of the ejusdem generis principle, therefore, is especially appropriate here. See, for example, *People* v. *Thomas,* 25 Cal. 2d 880, 899, where the Supreme Court of California observed that, "In construing criminal statutes the *ejusdem generis* rule of construction is applied with stringency." Consistent with the above interpretation also are both the use of the word "depository" and the title of the statute.

The majority reason further that the Legislature may well have intended to punish possession of instruments intended for use in committing a trespass. The short answer to this is that the crime of trespass in general did not appear on the Massachusetts statute books until almost ten years after the statute in question was passed, and it was almost thirty years later before trespass to buildings was made an offence.[1] The assertion that the Legislature could have had in mind the "crime" of trespass when it inserted the words "any other crime" seems to be, therefore, without foundation. Moreover, even if all other crimes were included, trespass itself would not be since it is not a separate crime committed after entry, but one committed by the very act of entry itself.

The judge below rested his decision in part on the ground that the Legislature could not have intended to prevent the commission of misdemeanors by making intent to use bur-

---

[1] A statute in form similar to the present trespass statute was St. 1890, c. 410, which amended Pub. Sts. c. 203, § 99 (1882), to read: "Whoever without right enters upon or remains on or in the dwelling-house, buildings or improved or enclosed land of another, after being forbidden so to do . . . shall be punished by a fine not exceeding twenty dollars." Before 1882 the only trespass statute in Massachusetts concerned land under tillage and was first enacted in 1862 (St. 1862, c. 89). "Forcible entry" was indictable at common law, but the elements are not charged in the indictment before us. *Commonwealth* v. *Shattuck,* 4 Cush. 141, 145.

glary tools to accomplish them a felony. I agree. As noted, there was no crime of trespass when the statute in question was passed. In 1890 the maximum penalty for the crime of trespass was a fine of $20. This remained the maximum penalty until 1969.[2] That the Legislature contemplated the prevention of a crime punishable with a $20 fine by a separate crime punishable by ten years in prison is hardly conceivable. Consistent with this conclusion is that no case has been called to our attention — and I have found none — in which the statute under consideration in its more than 115 years of existence has been applied to a crime of a nonacquisitive nature.

My belief in the correctness of this conclusion is reinforced by G. L. c. 266, § 16A, which provides that one who breaks and enters a building in the nighttime or daytime with the intent to commit a misdemeanor is guilty of no more than a misdemeanor. The punishment (six months imprisonment) is to be contrasted with the ten year penalty provided by the statute in question. While I recognize that § 16A was enacted much later than § 49, it nevertheless evinces a legislative pattern that would not treat the offence here involved as a felony.

I would affirm the action of the court below in dismissing the indictment for failure to state a crime.

---

[2] Statute 1969, c. 463, § 2, increased the penalty to a fine of not more than $100 or imprisonment for not more than thirty days, or both.