**STATE of Maine**

v.

**Roland C. COOKSON.**

Supreme Judicial Court of Maine.

July 31, 1972.

John L. Easton, Jr., County Atty., Dover-Foxcroft, for plaintiff.

Wright & MacMichael, by James MacMichael, Skowhegan, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEATHERBEE, Justice.

A Piscataquis County jury found the defendant guilty of the crime of burglary, as defined by our statutes in 17 M.R.S.A. § 751. The Defendant appealed.

The jury could properly have found from the evidence as follows:

In the early evening of January 6, 1971, Mr. and Mrs. Livermore, an elderly couple who live in Milo, received a visit from the Defendant with whom they had had a slight previous acquaintance. The Defendant left and at about 10:35 he returned, ostensibly to see if he had dropped his billfold in the Livermore kitchen. In fact, the Defendant and three other men had arranged that the Defendant was to pretend he had lost the billfold in order to get the door unlocked so that the other three could get in and steal the Livermores' property. Mrs. Livermore opened the door for him to enter and she and the Defendant looked around the kitchen for the billfold for about five minutes when the front door suddenly burst open and three men, their faces masked with nylon hose, entered and seized the Defendant, pretending to knock him to the floor. While the Defendant feigned unconsciousness, the three men seized and held Mr. and Mrs. Livermore and demanded their money. After taking money from the victims, one of the intruders detained the elderly people in the living room at which time the Defendant got up from the floor and went upstairs where the intruders opened bureau drawers and boxes in a search for more money. At this point the Defendant looked out the window and saw a police car in front of the house. He then went down and resumed his supine position on the kitchen floor while his associates broke open the back door and ran away.

The Defendant was represented at trial by court appointed counsel who now assigns several claimed errors on appeal.

*Motion for Change of Venue.*

Before trial the Defendant moved for a change of venue principally on the basis of articles concerning the crime published in the area newspapers and the Defendant's bad reputation in that county as a result of prior criminal charges.

The testimony on voir dire disclosed no indication of local prejudice against Defendant and there were no published statements by public officials expressing belief in Defendant's guilt. The

evidence fell short of demonstrating a climate of hostility and prejudice against Defendant which would prevent a fair trial in Piscataquis County. If the rather explicit account of the crime, photographically illustrated with scenes in the ransacked home, which appeared once in the Milo newspaper presented any danger of outraged feelings against a person charged with such a crime, the danger was successfully avoided. A careful voir dire was conducted of the jury panel by the Presiding Justice and only five prospective jurors recalled reading any newspaper reports or hearing any radio or television reports of the crime. Four of these five did not serve on the panel. The fifth remembered reading of the alleged burglary and hearing it discussed by family, friends and neighbors but said she had an open mind as to the Defendant's guilt or innocence. She was not challenged by the defense and Defendant's counsel told the Court that the jury was satisfactory to the Defendant. We do not find that the Presiding Justice's denial of the Motion for Change of Venue was an abuse of his discretion. For an extensive discussion of problems of pre-trial publicity see State v. Coty, Me., 229 A.2d 205 (1967).

### Defendant's Motion to Dismiss

While the indictment contains an allegation seldom encountered here, as we will later discuss, it sufficiently alleges a violation of 17 M.R.S.A. § 751.

### The Court's charge concerning Intoxication

During his charge to the jury the Presiding Justice instructed it in substance that while voluntary intoxication is not an excuse for crime and does not make innocent an otherwise criminal act, this Defendant was charged with a crime an essential element of which was the specific intent to steal. He told the jury that it should return a verdict of Not Guilty if it found that the Defendant was so intoxicated that he had so far lost his reason and faculties that the jurors had a reasonable

doubt that he was able to form and have a purpose to steal.

The Defendant does not quarrel with the legal principles which the Justice explained to the jury but he complains that while he testified that he was "drinking" enough so that he "could feel it" when he first visited the victim and that he had then drunk "a few beers" between his first and his last visit (he and a friend consumed "9 or 10 beers" on this latter occasion), the evidence fell short of demonstrating that he was, in fact, intoxicated. Therefore, the Defendant says, the Justice's reference to intoxication could only prejudice the jury as to his credibility and as to the likelihood of his being disposed to commit such a crime.

The Defendant takes nothing by this objection. The statutes demand that the Presiding Justice

"... [S]hall ... charge the jury ... upon all matters of law arising in the case but shall not, during the trial, including the charge, express any opinion upon issues of fact arising in the case ..." 14 M.R.S.A. § 1105.

The Presiding Justice correctly stated to the jury the rule of law relating to intoxication and crimes requiring a specific intent. State v. Smith, Me., 277 A.2d 481 (1971). However, mere abstract principles of law, although correct, should not be given unless they are applicable to the facts in evidence. State v. Benson and Greenlaw, 155 Me. 115, 151 A.2d 266 (1959).

In *Smith*, which also involved a charge of burglary, there was evidence that the Defendant had consumed some intoxicating liquor before committing the offense. The Defendant objected to the Justice's instruction to the jury that the mere drinking of intoxicating liquor does not excuse or minimize the responsibility of the individual who commits a crime. On appeal, this

Court found no error in the giving of this familiar instruction.

The Defendant in *Smith* requested an instruction that the jury should find the Defendant not guilty if it found that the intoxicating liquor had impaired his ability to form the specific intent necessary in burglary. On appeal we found that this instruction was correctly refused, saying, 277 A.2d at page 492:

> "Before a court is required or justified in giving an instruction submitting to the jury the issue, whether the defendant's condition of inebriety was such as to destroy his mental capacity of having, entertaining or formulating a particular specific intent, there must be evidence upon which to base such an instruction. Unless there was evidence which tended to prove that the mental condition of the defendant from drunkenness was such, at the time of his breaking and entering of the L.D. home, that he was not capable of having the intent to rape, then an instruction upon that subject as requested by the defendant was unauthorized, . . . ."

The factual situation in this case is analogous to that in *Smith*. While the evidence concerning the Defendant's drinking justified the Court's giving the familiar explanation that the use of intoxicating liquor does not excuse an otherwise criminal act, there was no evidence indicating, or argument by Defendant's counsel claiming, that Defendant's use of intoxicating liquor· had rendered him incapable of forming the specific intent to steal. In short, Defendant would not have been entitled to such a charge as to specific intent if he had requested it.

■ Here the instruction was given over Defendant's objection. However, the Defendant's counsel had commented in ar-

gument that the Defendant had been drinking alcoholic liquor that evening in explaining the Defendant's possible inaccuracies as to minor details of the time sequence and the County Attorney had replied to this. These comments resulted in the Justice's charge on intoxication which was technical, was not inflammatory and in no way suggested bad character or testimonial unreliability on the Defendant's part. We are satisfied that it was harmless error.

*The Presiding Justice's explanation to the Jury as to the elements of the offense charged*

■ At common law the crime of burglary consisted of breaking and entering a dwelling house in the nighttime with intent to commit a felony. State v. Neddo, 92 Me. 71, 42 A. 253 (1898); Bishop's New Criminal Procedure, 2d Ed., Vol. 3, § 128. This was substantially the language defining the statutory crime of burglary in Massachusetts until 1806[1] when the Legislature added the words "or, having entered . . . breaks in the nighttime a dwelling house".[2] This statutory amended definition was adopted by our own first Legislature[3] and has remained in substantially the same form up to this time.[4] Today, 17 M.R.S.A. § 751 defines burglary:

> "Whoever breaks and enters in the nighttime with intent to commit a felony or any larceny or, having entered with such intent, breaks in the nighttime a dwelling house, any person being then lawfully therein, is guilty of burglary. Whether he is, before or after entering, armed with a dangerous weapon, or whether he assaults any person lawfully therein or has any confederate present aiding or abetting or not, in either case he shall be punished by imprisonment for any term of years."

---

1. Laws of Massachusetts, Vol. I, page 224 (1785).

2. Laws of Massachusetts, Vol. III, page 345 (1806).

3. P.L.1821, Chap. 6, § 1.

4. In 1947 the intent necessary to constitute burglary was extended to include petty larcenies. P.L.1947, Chap. 167, § 8.

The indictment here charges:

"That, on or about the sixth day of January, 1971, in the Town of Milo, County of Piscataquis, and State of Maine, the above named Defendant, Roland C. Cookson, did in the nighttime of said day, the dwelling house on one Helen M. Livermore, there situate, unlawfully and feloniously did enter, with intent the goods, chattels and property of the said Helen M. Livermore and one J. Quincy Livermore, in said dwelling house then and there being, then and there unlawfully and feloniously to steal, take and carry away; and the said Roland J. Cookson being so as aforesaid then and there in said dwelling house, in the nighttime of said day, and aided and abetted by certain confederates then and there present, then and there unlawfully and feloniously did break said dwelling house, the said Helen M. Livermore and J. Quincy Livermore being then and there lawfully therein, against the peace of said State, and in violation of Title 17, Section 751, M.R.S.A."

We note that the statute not only forbids the nighttime breaking and entering of the dwelling with felonious or larcenous intent but it also prohibits a breaking *inside* the dwelling *after* an entry has been made with the same evil intent.

■ Here the State has chosen to charge the Defendant with breaking the house after an entry had been made. It is clear that proof by the State, however strong, that the *original entry* was in fact a breaking (whether based on the theory that it was gained through fraud and deceit [5] or on the principle that one who is present, either actually or constructively, and knowingly assisting in the commission of a crime is guilty as a principal) [6] would not support a conviction *for the crime charged here.*

We are for the first time called upon to construe the words of the statute "or having entered with such intent, breaks . . . a dwelling house". The question appears to be whether the Legislature intended burglary to include the unobstructed movement from room to room and the forcible opening of such objects within the house as chests, drawers, boxes, or whether the intent was to confine the application of the statute to breaks in the structure of the house itself.

We find little assistance in the history of the Massachusetts statute. In 1805 the Massachusetts Court was faced with an appeal of defendants who, while lawfully inside a room of a dwelling, moved a plank which separated that room from one rented to the victims and thus entered and stole the victims' property. The Court held that as "the plank was not fixed or fastened, but was so loose that it could be slid back and forth" the entry could not be considered to be a breaking. Commonwealth v. Trimmer, 1 Mass. 476 (1805).

Although the *Trimmer* decision did not reach the issue confronting us it seems probable that it suggested to the Massachusetts legislature the likelihood that multiple-occupancy of buildings would present problems of interior breaks by persons who had entered the dwelling as invitees but with felonious intents. In any event, the following year the Legislature added the provision relating to breaks inside the dwelling house, which was included in our own first statutes and has continued to this day.

It appears clear that the offense of burglary is one primarily against the security of the habitation.[7] It marks the state's de-

---

5. The perplexing language of State v. Newbegin, 25 Me. 500 (1846) as to entry by fraud and deceit constituting a break has not been examined recently by this Court.

6. State v. Burbank, 156 Me. 269, 163 A.2d 639 (1960); State v. Saba and Korbett, 139 Me. 153, 27 A.2d 813 (1942).

7. "Burglary is an offense not against mere property but against another's habitation, the gist of the crime being the felonious invasion of a man's dwelling." 3 Burdick, Law of Crime, § 698, p. 20. See also 13 Am.Jur., Burglary, § 2; 12 C.J.S. Burglary § 16.

termination to safeguard in his dwelling the homeowner, his family and guests from the dangers that accompany felonious invasions of their sanctuaries during the particularly vulnerable periods of darkness. The penalties for violating the security of the home with felonious intent were most severe—in 1821, if the intruder was armed or an occupant was assaulted the penalty was a mandatory sentence of death. Laws of Maine, 1821, Chap. VI, § 1. 17 M.R.S.A. § 751 now provides for punishment by imprisonment for any term of years.[8]

Our first Legislature, following the philosophy of its Massachusetts predecessor, enacted with its burglary statute laws defining what it apparently considered to be lesser offenses involving entries into dwellings. It is significant that the laws creating these offenses—entries into dwellings with felonious intent without breaking, breaking into dwellings in the daytime and larcenies in dwellings—carried penalties much less severe than that for burglary.[9]

This aspect still distinguishes burglary —an offense against the security of the habitation—from other statutes [10] which the Legislature saw fit to enact primarily to protect the integrity of buildings and their contents. State v. Pelkey, Me., 238 A.2d 611 (1968).

This, together with the nature of the common law crime of burglary, leads us to the conclusion that the Legislature in 1821, when burglary was punishable by death, intended the statutory offense to include interior breaks *of the structure of the dwelling*. The security of the habitation was threatened by forcible breaks into inner subdivisions of the dwelling by persons already inside the dwelling. We find that it is generally held that one who enters a dwelling (or other building included in the

various burglary statutes) through an open door and then, while inside, breaks an inner door with the necessary intent, is guilty of burglary. State v. Scripture, 42 N.H. 485 (1861); State v. Ferguson, 149 Iowa 476, 128 N.W. 840 (1910); State v. Burke, Mo., 462 S.W.2d 701 (1971); State v. Rio, 38 Wash.2d 446, 230 P.2d 308 (1951); Bowie v. State, Tex.Cr.App., 401 S.W.2d 829 (1966); People v. Young, 65 Cal. 225, 3 P. 813 (1884); Anderson, Wharton's Criminal Law and Procedure, 12th Ed., 1957, Vol. 2, § 416; 13 Am.Jur. 2d, Burglary, § 21; 12 C.J.S. Burglary § 6.

Conversely, we find that the weight of authority holds that the crime of burglary is not committed by a break by the culprit into trunks, boxes or articles of furniture. Commonwealth v. Tilley, 306 Mass. 412, 28 N.E.2d 245 (1940); Allen v. State, 28 Okl.Cr. 373, 231 P. 96 (1924); Anderson, supra, § 419; 13 Am.Jur.2d, Burglary, § 21; 12 C.J.S. Burglary § 5.

We conclude that our Legislatures, originally and at the times of revisions, intended the burglary statute to encompass only breaks in the structure of the building including inner doors and other inner barriers which are intended to deny access to parts of the dwelling to persons whose entrance is not desired. A breaking occurs when the obstruction is moved to a material degree to permit passage. State v. Mower, Me., 275 A.2d 584 (1971).

In this case, there was testimony that after the entry of the three masked men the intruders went from the kitchen to the dining room and then upstairs where they went into two bedrooms, opening bureau drawers and a box and a jewelry chest. We are not told whether they opened any interior doors or other such barriers to accomplish their felonious purposes.

---

8. We intend no comment on the possible effect of P.L.1971, Chap. 539, § 6, now 17 M.R.S.A. § 751–A, which provides a separate penalty for committing burglary while armed, any person being lawfully therein.

9. P.L.1821, Chap. VI, § 3, Chap. VII, §§ 5 and 6.

10. See 17 M.R.S.A. § 754 and 17 M.R.S.A. § 2103, where the maximum penalties provided are markedly less severe than for burglary.

In his instructions to the jury the Presiding Justice said:

"Now, the statute goes on, 'whoever having entered, or broke and entered, or broke after entering', which could very well mean getting into one part of an apartment and going to another section of the building with intent to steal, that could be under some circumstances a break after a lawful entry."

The Defendant's counsel seasonably objected.

We must bear in mind that outrageous as the conduct of the intruders was, the Defendant is charged with breaking the house *after* entering. While there was evidence from which the jury might under proper instructions have found that Defendant had broken and entered the dwelling as a result of having participated in the violent entry of the other three, he was not charged with that illegal conduct.

The Justice's instructions as to the nature of activity which would constitute a breaking after entry were, we are convinced, erroneous. We cannot find that the error was harmless.

The entry must be:

Appeal sustained.

Remanded for new trial.