**STATE of Maine**

v.

**William LERMAN.**

Supreme Judicial Court of Maine.

March 30, 1973.

Ronald E. Ayotte, County Atty., Roland A. Cole, Asst. County Atty., Alfred, for plaintiff.

Reef & Mooers, Daniel W. Mooers, Norman S. Reef, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The Defendant was convicted in the Superior Court in York County of the offense of breaking, entering and larceny in the daytime. The indictment charged him with breaking and entering in the daytime the

dwelling house of Beth Gilman and stealing jewelry there which was owned by Mrs. Gilman. Defendant's appeal presents two issues. First, Defendant urges us that the statute upon which the indictment was based—17 M.R.S.A. § 2103—does not create an offense of breaking, entering and larceny in a dwelling house in the daytime and, secondly, that the circumstantial evidence presented to the Court was insufficient to prove that the Defendant committed a larceny.

The Justice before whom the case was tried, jury waived, could have found these facts from the evidence:

Mrs. Gilman lived on the north side of East Grand Avenue in Old Orchard. On June 30 at about 11:00 or 11:30 A.M. she left her home with her two children, crossed East Grand Avenue and went directly to the beach which lies close to East Grand Avenue. Just before she left her bedroom, where she had changed to her bathing suit, she observed the jewelry in question lying in a jewelry box on the top of her bureau. When she went out of her house she left the front doors closed and locked and the side or kitchen doors closed but unlocked. No one remained in the house.

At about 2:00 P.M. Mrs. Gilman returned to her home and entered the kitchen through the side entrance. A few moments later, the Defendant—a stranger to her—walked out into the kitchen from the living room. The Defendant inquired if this was the Bernstein home and Mrs. Gilman said it was not. At this time a second man, also unknown to her, came out of the living room and insisted that this was the Bernstein home. Mrs. Gilman asked the two men to leave and they did so at once and drove away from the area immediately in a car which was parked a short distance away on the opposite side of the street.

Mrs. Gilman phoned the police at once and then went to her bedroom where she found the jewelry box on the floor. The jewelry was gone. So was some money which she had left in her pocketbook in the kitchen. She has never recovered either. The living room and bedroom were not directly connected with each other but were on the same floor and each could be reached from the kitchen.

After the State rested, the Defendant moved for a judgment of acquittal which was denied. The Defendant then took the stand in his own behalf. He told the Court that a friend named Chambers came to him in Portland that morning and asked the Defendant to drive him to Old Orchard where the friend wished to see a Mr. Bernstein. He testified that Chambers asked to be dropped off at the parking lot of the Diplomat Hotel which is diagonally across the street from the Gilman home and about 150 feet distant. Chambers left the car but the Defendant did not notice where he went after leaving the parking lot. After waiting in the car 10 or 15 minutes the Defendant went looking for Chambers to find out "what was holding him up".

Defendant said he went directly to the Gilman house, knocked on the side door and heard someone say "Come in." He then opened both screen and inside doors and entered the house, walking through the kitchen into the living room where he found Mr. Chambers "just standing there". He said that Mrs. Gilman entered "two or three minutes" later and told the men to leave or she would call the police. Defendant said he took nothing from the house and that upon leaving he asked Chambers what he was doing there and Chambers answered "Nothing." The two men looked no further for Mr. Bernstein and returned at once to Portland.

The Defendant rested and renewed his motion for judgment of acquittal which was denied.

*Interpretation of 17 M.R.S.A. § 2103*

Does 17 M.R.S.A. § 2103 create the offense of breaking and entering a dwelling house in the daytime and committing larceny there?

The statute, including title, reads:

"§ 2103.  Larceny of dwelling house by night or breaking and entering

Whoever, without breaking, commits larceny in the nighttime in a dwelling house or building adjoining and occupied therewith, or breaks and enters any office, bank, shop, store, warehouse, barn, stable, house trailer, mobile home, inhabitable camp trailer, vessel, railroad car of any kind, courthouse, jail, meetinghouse, college, academy or other building for public use or in which valuable things are kept, and commits larceny therein, shall be punished by imprisonment for not more than 15 years; and when the offense is committed in the daytime, by a fine of not more than $1,000 or by imprisonment for not more than 6 years."

It is Defendant's contention that this statute creates two separate offenses—

1) larceny from a dwelling house at night without breaking, and

2) breaking and entering and larceny in certain other specific structures and in "other buildings for public use or in which valuable things are kept" in either daytime or nighttime.

Notably missing, Defendant says, is any specific reference to the act of *breaking and entering* a dwelling house and committing larceny therein in the *daytime*.  The Defendant argues that the last clause of the statute—"and when the offense is committed in the daytime, by a fine of not more than $1,000 or by imprisonment for not more than 6 years"—does not serve to expand the first offense from larceny in the nighttime to include larceny in the daytime

and, *a fortiori*, not to include breaking, entering and larceny in the daytime.

In short, the Defendant contends that breaking, entering and larceny in a dwelling house in the daytime is not made, a criminal offense by section 2103.

It is true that the language of section 2103 does not specifically prohibit breaking, entering and larceny in a dwelling house *as such* in the daytime—or in the nighttime.  For that matter, neither does any present Maine statute.[1]

The present indictment reads:

"That William Lerman, of Portland, Maine, on or about the thirtieth day of June, 1971, in the Town of Old Orchard Beach, County of York, and State of Maine, in the day time of said day, *the dwelling house of one Beth Gilman*, situated on East Grand Avenue, in said Old Orchard Beach, *a place where valuable things are kept*, feloniously did break and enter and three (3) wedding rings, one white gold, and two gold, size six, of the value of one hundred dollars ($100.00); one engagement ring with one three quarter carat diamond, of the value of seven hundred dollars ($700.00); one (1) birth stone ring (September), of the value of ten dollars ($10.00); one (1) cameo pin (antique) of the value of twenty-five dollars ($25.00); two (2) ladies Timex watches (wrist), of the value of twenty-four dollars; one (1) Federal Reserve banknote, of the value of one dollar ($1.00); and sundry silver and copper coins, a more complete description of which is to these Grand Jurors unknown, of the approximate value of eight hundred sixty dollars ($860.00), of the property of said Beth Gilman, in said

---

1.  17 M.R.S.A. § 754 specifically prohibits breaking and entering a dwelling house in the daytime and entering a dwelling house without breaking in the nighttime but only if the acts are done with the intent to commit a felony or any larceny. 17 M.R.S.A. § 751 (Burglary) makes criminal nighttime breaking and entering

of dwelling houses with intent to commit a felony or any larceny and also nighttime interior breaking after a lawful entrance had been gained with such intent (State v. Cookson, Me., 293 A.2d 780 (1972)) but only if "any person is lawfully therein".

dwelling house then and there being, then and there in and from said dwelling house feloniously did steal, take and carry away." (Emphasis added.)

The question raised by this appeal is not whether the statute can be construed to forbid by implication this conduct in a dwelling house *per se* and we suggest no opinion as to this.

The precise issue before us is whether the statute prohibits such conduct in a "dwelling house, . . . *a place where valuable things are kept*". (Emphasis added.)

This Court examined the language of section 2103 in State v. Fitzherbert, Me., 242 A.2d 686 (1968). There the Defendant was charged with breaking, entering and larceny in the daytime in "the residence of [X], a place in which valuable things are kept". Fitzherbert's attack upon section 2103 was somewhat different from that of the present Defendant. Fitzherbert objected that the description of the building as a "residence" does not come within the "dwelling house" provision of the statute. The Court said at 687:

". . . The State, however, brings the 'residence' within the meaning of 'other building' in which valuable things are kept. We are in accord with the position of the State. The term 'residence' is defined as 'a building used as a home: dwelling: . . . .' See Webster's Third New International Dictionary (1961 edition). No harm has come to the Defendant from the use of the word 'residence' in place of the words 'dwelling house.'"

Thus, *Fitzherbert* holds that a "residence" is one of the class of buildings intended to be protected by the statute if in fact valuable things are alleged and proved to be kept there. Certainly, in common use the words "residence" and "dwelling"

have the same meaning when used as descriptive of a structure.

We find in the history of the statute nothing which argues against the conclusion that a "dwelling house" is not similarly included.

The Maine statutory origin of section 2103 is found in P.L.1821, Ch. 7, §§ 5 and 6. Sections 5 and 6 dealt with several crimes against dwelling houses (as well as some other structures) and forbade, among other acts, breaking and entering dwelling houses in the daytime, entering without breaking in the nighttime and larceny from a dwelling house in the daytime.

These sections were revised and somewhat streamlined in the revisions of 1840 and 1857. R.S.1840, Ch. 156, §§ 2 and 3 still forbade larcenies without breaking in dwelling houses in both daytime and nighttime and breaking and entering in both daytime and nighttime in various buildings or in "any building in which . . . any valuable thing shall be kept . . .". Specific reference to breaking and entering *dwellings* disappeared from this statute in 1840.

R.S.1857, Ch. 120, § 2 combined the two sections into one, specifically forbidding nighttime larcenies without breaking in dwelling houses and dealing with both daytime and nighttime breaks in the same section by the addition of a new final clause providing for lesser punishment for daytime breaks:

"SECTION 2. Whoever, without breaking, commits larceny in the night time in a dwelling-house, or building adjoining and occupied therewith; or breaks and enters any office, bank, shop, store, warehouse, barn, stable, vessel, court house, jail, meeting house, college, academy, or other buildings for public use, or in which valuable things are kept, and commits larceny therein, shall be punished by imprisonment not less than one, nor more than fifteen years; and

when the offence is committed in the day time, by imprisonment not more than six years, or by fine not exceeding one thousand dollars."

It seems particularly significant in this brief historical analysis that specific reference to *breaking and entering* dwelling houses disappeared in the 1840 revision at the same time that the Legislature first added the "any building in which . . . any valuable thing shall be kept" language and that this same format was continued when the Legislature combined the daytime and nighttime sections in 1857.

One thing is evident from the examination of this perplexing statutory development—the 1857 Legislature intended to place *nighttime* larcencies in dwelling houses, *without breaking*, in the same degree of seriousness as *breaking, entering and larcencies* in the *nighttime* in the other structures listed and in any building where valuable things are kept.[2]

But did the 1840 and 1857 Legislature intend that the act of *breaking, entering and larceny* in a dwelling house *as such*, in either daytime or nighttime, should no longer be a criminal offense? In the present case, however, the issue which faces us is the narrower one of whether the Legislature so intended when it is alleged and proved that the dwelling house is *also* a place where valuable things are kept? It seems very unlikely that these Legislatures—and succeeding Legislatures which reenacted these sections in revisions—had such intentions.

■ The problem, then, is whether we can find from the language used by the Legislature a legislative intent to make the act of breaking, entering and larceny in the daytime in a dwelling house, a place where valuable things are kept, a criminal offense. If language to show such an intent is lacking, the Court cannot supply it. State v. Howard, 72 Me. 459 (1881).

We had occasion in State v. Ferris, Me., 284 A.2d 288, 290 (1971) to consider and apply the rule of *ejusdem generis*. We said:

"In construing the ambiguous use of the general language of the statute we turn to the familiar rule of *ejusdem generis*. When words of enumeration are immediately followed by words of general import the general words, when their use is uncertain, should be governed by the specific. Here, the enumeration of devices specifically prohibited— 'punch board, seal card, slot gambling machine'—indicates that in adding the words 'other implements, apparatus or materials of any form of gambling' the Legislature intended to include only other articles which also have a per se relationship to the determination of the outcome of wagers recognizable from common experience. We hold that the Legislature's addition to the general language prohibits the possession of other implements of the same character and class as those gambling devices specifically mentioned. . . ."

■ The rule appears appropriate for use in these circumstances and when we apply it to the language of the 1857 revision it gives little or no support to the State's contention that dwelling houses were then intended to be included as buildings "in which valuable things are kept". We cannot say that a dwelling house is of the "same character and class" as an "office, bank, shop, store, warehouse, barn, stable, vessel, courthouse, jail, meeting house, college [or] academy". However, in 1967 the Legislature reenacted the section with which we are presently concerned—section 2103—amending its language to specifically extend the protection of the statute to certain structures designed as both temporary and permanent living units

2. The rationale which we adopt in the resolution of this issue makes it unnecessary for us to consider whether or not the

section also prohibits *daytime* larcenies in dwelling houses *without breaking*.

—that is, house trailers, mobile homes and inhabitable camp trailers.[3] Therefore, if the rule of *ejusdem generis* would have barred the construction which the State seeks before this 1967 amendment, it no longer does so. The Legislature has now demonstrated that its prohibition of breaking, entering and larceny in the kinds of structures in which valuable things are kept is not intended to be limited to nonliving quarters types such as offices, banks, shops, etc. but now unmistakably includes structures used for human habitation.

 We hold that breaking, entering and larceny in a dwelling house in either the daytime or the nighttime is punishable under section 2103 if—as here—it is alleged and proved that the dwelling is a place where valuable things are kept, the range of permissible punishment being governed by the allegations and proof with respect to the time of day when the offense occurred. *Was the circumstantial evidence sufficient to establish the Defendant's guilt of the offense charged?*

We must test the sufficiency of the evidence against the familiar rule that if the State relies on circumstantial evidence to establish guilt it is not sufficient that the evidence all points in the direction of the guilt of the accused but such evidence must prove each circumstance upon which a conviction must rest beyond a reasonable doubt and be sufficient to exclude every other reasonable hypothesis except that of the Defendant's guilt. State v. Allen, 151 Me. 486, 489, 121 A.2d 342, 345 (1956).

 We agree with the Defendant that the fact that Defendant was shown to have had an opportunity to steal the jewelry and money is not enough to justify his conviction. State v. Trask, Me., 223 A.2d 823, 825 (1966). But the Justice here had heard evidence which, if accepted by the Justice, went far beyond mere proof of opportunity. The testimony showed that the property was in the house when the owner left and when she returned 2½ hours later it had been stolen. The Defendant and his companion were surprised inside the house and offered her no reasonable explanation of their presence there. The Justice was justified in finding that the Defendant's opening the side doors and entering was a breaking and entering as defined by State v. Mower, Me., 275 A.2d 584, 586 (1971). The circumstances of the Defendant's visit to the area, his explanation of his friend's purpose and of his own later decision to enter the house, his explanation of his presence in the living room of the house with his friend and the abrupt departure of the two men from the town without further attempt to find the "Bernstein residence" were circumstances which entitled the Justice to reject the hypothesis of innocence and to be satisfied beyond a reasonable doubt that the two men had burglarized the Gilman home in a joint enterprise.

The entry will be:

Appeal denied.

All Justices concurring.

---

3. P.L.1967, ch. 77, § 2103. Note that the language of R.S.1857, ch. 120, § 2 has been amended on three other occasions but none of these changes have any direct bearing on the problem being analyzed here. See P.L.1877, ch. 152, § 2, R.S. 1883, ch. 120, § 2, and P.L.1963, ch. 21, § 3.